FALLON ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 121, September Term, 1958.]

*Decided February 17, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and OPPENHEIMER, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Daniel B. Leonard,* with whom were *Francis J. Valle* and *Bowie, Burke & Leonard* on the brief, for the appellants.

*Wilfred T. McQuaid,* with whom was *Leonard A. Orman* on the brief, for the appellee Edmondson Holding and Developing Corporation.

*William C. Rogers* for the appellees Elizabeth Seitz Lee, *et al.,* Intervenors.

Submitted on brief by *Hugo A. Ricciuti, Acting City Solicitor,* and *Shirley Brannock Jones, Assistant City Solicitor,* for the appellee Mayor and City Council of Baltimore.

HAMMOND, J., delivered the opinion of the Court.

The City Council rezoned a two-acre lot in Baltimore, on the west side of York Road running north from Gittings Avenue, owned by the Seitz family, from residential to first commercial; and neighbors filed a bill to invalidate the rezon-

ing ordinance as being for the sole benefit of the owners and to the detriment of the neighborhood, without any consideration for the general welfare and needs of the community. The chancellor found the matter to be at least fairly debatable and the action of the Council not to be arbitrary, discriminatory, or illegal, and dismissed the bill.

The evidence was that York Road is a main arterial highway of Baltimore that continues into and through Baltimore County. The Towson area, which it serves, is literally mushrooming in growth year by year, and since 1945 has increased in value per square foot more than any comparable area in the United States. York Road carries a very heavy volume of traffic, and the load has greatly increased in recent years. When zoning was adopted in Baltimore in 1931, the Seitz lot, which has a frontage of about 300 feet on Gittings Avenue and a frontage of about 370 feet on York Road, was zoned residential except the northern 60 feet on York Road, which was zoned commercial. The northern boundary line of Baltimore is just beyond the northern edge of the lot and the area between them was also zoned commercial.

The 1931 ordinance zoned much of York Road residential, although commercial areas were put at prominent intersections, such as York Road and Belvedere Avenue, which extended back from York Road, both east and west, for 125 feet. Since 1931, York Road from 42nd Street north to Towson has become almost all commercial, with only a few scattered residential strips remaining. The commercial districts originally established have been enlarged and their commercial uses intensified, as is illustrated by the department store at York Road and Belvedere Avenue, the erection of which necessitated commercial zoning for some 700 feet east of York Road.

One of the few remaining residential strips runs from Evesham Avenue, which is one block north of Belvedere, north to Gittings Avenue, a distance of approximately 1,500 feet. In this area, in recent years, have come to be a number of offices for doctors, dentists and chiropractors. Some of the doctors have offices in their homes; others live elsewhere and have offices in homes leased by them, as the zoning ordi-

nances of Baltimore allow in certain residential districts with the permission of the Board of Zoning Appeals. The principal zoning examiner in the Bureau of Building Inspection testified from his official records as to the permits issued for these uses. Real estate experts testified that an influx of non-resident doctors' offices into a residential area is a shadow of the coming event of the change of the area into a commercial one. On the east side of York Road, literally a stone's throw diagonally across from the Seitz property, beginning at Walker Avenue and extending over the Baltimore City line into Baltimore County, there was erected a few years ago a very large shopping center, which includes one of the city's largest department stores and a number of other stores. In 1950 the property on the north side of Walker Avenue between York Road and Castle Drive was rezoned from residential to first commercial, and in 1956 the property also on the north side of Walker Avenue, 125 feet east of York Road, was similarly rezoned. These rezoned properties are directly across York Road from the northern part of the Seitz property and adjoin the shopping center.

Immediately north of Walker Avenue on the east side of York Road is a lot which has long been zoned commercial and used as a small restaurant, on which has been recently erected a building for several stores and offices. This commercial use is across from the Seitz lot.

The real estate experts testified that the Seitz property was best suited for commercial use because inevitably arterial road frontages all become commercial, under present day conditions and trends, to serve the needs of the community, and because the house on the property, which was old, large and dilapidated, had no sales or rental market and the lot is not suitable for residential development. They further testified that there would be no deterioration in value or other adverse effect on the nearby York Road properties or those to the east of York Road if the reclassification stood, and that only the immediately adjacent property on Gittings Avenue would be slightly affected, leaving unaffected other residential properties to the west of York Road, near the Seitz lot, such as those in Cedarcroft, in which most of the protestants live.

When the present rezoning ordinance was under consideration, the Planning Commission recommended that it not be approved. The Board of Municipal Zoning Appeals, noting that the plan was to use the Seitz lot for retail stores and an office building with off-street parking facilities, that a portion of the existing lot was already zoned first commercial, and that across the street were the commercial uses which have been mentioned, recommended the passage of the ordinance. Henry A. Barnes, the Commissioner of the Department of Traffic and Transit, with his staff, carefully reviewed the Seitz lot and the neighborhood and advised the Mayor before the ordinance was signed that no difficulty would be created by traffic generated by the facilities which might be constructed there and, so, saw no reason why the proposed development would be harmful from the point of view of traffic hazards. The protestants produced no countervailing expert testimony on the point although they expressed their feelings that there would be an adverse effect.

The parties are agreed that there was no error in original zoning and that the case turns on whether there has been such a change in conditions as to justify the rezoning. The record shows drastic changes over the years since 1931 all along York Road, and several changes to commercial use in the immediate neighborhood of the Seitz lot in the last few years. As we noted in *Muhly v. County Council for Montgomery County,* 218 Md. 543, just decided (in that case in connection with the effect of general rezoning on changes since the original zoning), it is the "cumulative effect that may be decisive" and held once more that "* * * reclassification which finds support in a genuine change in conditions * * * should not be stricken down."

We think the facts in the case undoubtedly permitted the findings of the chancellor that the rezoning was not for the sole benefit of the Seitz family, and did not deteriorate the neighborhood, without relation to or regard for the general welfare and the needs of the community. As he pointed out in his opinion below, the ordinance did not create a commercial area in an exclusively residential development, because York Road, except for a few hundred feet south of

Gittings Avenue is commercial, and in those few hundred feet there are many uses of property that usually precede commercial uses soon to come. He found that if the present residential area south of Gittings Avenue is to remain, the north side of that avenue would be a more natural boundary for the southern end of the commercial use district than the present boundary, which runs through and splits the Seitz property. We cannot say he was clearly wrong in his determinations.

Judge Carter concluded his opinion by saying: "The evidence of a change in the neighborhood from Residential Use to First Commercial Use is abundant. There is, of course, a difference of opinion. When the opinions of the City Planning Commission, the Board of Municipal and Zoning Appeals, the City Council (which approved the ordinance), the Mayor (who also approved it), and the witnesses who testified in this case, are considered, even though they do not agree, there can be no doubt whatsoever that this question is 'fairly debatable'. The Court of Appeals in one of its latest decisions, *Wakefield v. Kraft,* 202 Md. 136, said, at page 142: 'It is not the function, duty or right of a Court to zone or rezone, but only to determine whether the legislative body has properly applied the governing law to the facts. If there is room for reasonable debate as to whether the facts justify the municipal legislature in deciding the need for its enactment, it must be upheld. It is only when there is no room for reasonable debate, or a record barren of supporting facts, that the Court can declare the legislative action arbitrary, capricious, discriminatory or an unequal application of the law.' And again at page 143 of said case is the following: 'Whether there has been such a substantial change of conditions in a use district as to warrant the enactment of an amendatory zoning ordinance is primarily a question for the Council to determine, and its action, in reference thereto, will not be reviewed by the courts if the question is fairly debatable. It is only when the legislation is clearly arbitrary and unreasonable that a court will interfere.'

"In my opinion, under the facts and testimony in this case, it cannot be held that this ordinance is not fairly debata-

ble, and I cannot substitute my judgment, whatever it might be, for that of the legislative body and Chief Executive of the City of Baltimore; nor can I, under these circumstances, find that the action of the legislative body was arbitrary, capricious, illegal, or discriminatory."

We think the record and the controlling law give full support for his conclusions, and the decree dismissing the bill must be affirmed.

*Decree affirmed, with costs.*