REUS, JR. *v.* MAYOR AND CITY COUNCIL
OF BALTIMORE ET AL.

[No. 41, September Term, 1959.]

*Decided November 16, 1959.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Douglas H. Gordon,* with whom was *Charles D. Harris* on the brief, for appellant.

*Donald N. Rothman,* with whom were *Gordon, Feinblatt & Rothman, Harrison L. Winter, City Solicitor,* and *James B. Murphy, Assistant City Solicitor,* on the brief, for appellees.

PRESCOTT, J., delivered the opinion of the Court.

Pursuant to the provisions of Section 17 of Article 40 of the Baltimore City Code (1950), as revised by Ordinance No. 711, approved May 21, 1953, the Mayor and City Council of Baltimore duly ordained Ordinance No. 1582 which granted permission to the appellee, The Vernon Realty Company (Realty Company) and Fred R. Holzworth and wife, owners, to establish, maintain and operate an open area for the parking of motor vehicles on the property known as 221, 223 and 225 West Monument Street, in a Residential and Office Use district. Appellant, the owner of valuable property directly across the street, filed a bill of complaint to declare Ordinance No. 1582 void and invalid, and for an injunction and other relief. After hearing, the Circuit Court of Baltimore City passed its order dismissing the bill of complaint, and this appeal is from that order.

Prior to June 26, 1953, the entire block of West Monument Street, which includes the property presently involved, was zoned for Residential Use, but, on that date, was rezoned for Residence and Office Use, except for the westernmost buildings on the north and south sides which have their principal façades on Howard Street and have always been zoned for First Commercial Use.

Legal authority for the introduction and passage of Ordinance 1582 is found in the provisions of Section 17 of Article

40 of the Baltimore City Code (1950 Edition), titled Zoning, as revised by Ordinance No. 711, approved May 21, 1953. In brief, this section provides that notwithstanding any provision of the zoning ordinance, the Mayor and City Council of Baltimore may provide by ordinance, upon such conditions as the Mayor and City Council shall determine, for the establishment, maintenance and regulation of open areas in a Residential and Office Use district, or in a Residential Use district, for the parking thereon of automobiles when to permit the parking of such automobiles would benefit the health, safety or general welfare of the community. The section then provides that no such ordinance shall become effective until after public hearing in relation thereto, after publication of notice of the time and place of such hearing in a daily newspaper published in Baltimore City and the posting of a similar notice upon the area supposed to be used for such parking areas. It provides further that such an ordinance when introduced shall be referred to the Board of Fire Commissioners, the Commissioner of Transit and Traffic and the Planning Commission for investigation, recommendation and report.

Accordingly, upon its introduction, Ordinance No. 1582 (then No. 2212) was referred to the Planning Commission, Fire Department and the Commissioner of Transit and Traffic. The evidence shows that the Fire Department and the Commissioner of Transit and Traffic approved the passage of this Ordinance without reservation. The Planning Commission suggested that a low brick wall be built on the north side of the property and a planting strip provided for (both suggestions being adopted in the Ordinance), and with these changes also recommended approval and passage of the Ordinance.

The appellant does not deny that all of the provisions of Section 17 were complied with, nor does he contest the section's validity. He offered testimony in an attempt to show that there was no urgent need for the parking lot for which approval was sought, that if parking were allowed it would adversely affect the value of properties and the aesthetic appearance of the block of Monument Street involved, and that

there was no error in the original zoning or substantial change of conditions in the neighborhood.

In his brief, as well as in his argument, the appellant limits his contentions to a claim that there was no error in the original zoning of the property involved nor substantial change in the character of the neighborhood; consequently, he argues, Ordinance 1582, which permits a parking area in a zoning district where such a use is generally prohibited, is "piecemeal rezoning" or "spot zoning" and, therefore, "arbitrary and discriminatory, unconstitutional and void." In an attempt to sustain this argument, he relies almost entirely upon the cases of *American Oil Co. v. Miller*, 204 Md. 32, 102 A. 2d 727 and *Baylis v. City of Baltimore*, 219 Md. 164, 148 A. 2d 429. In the first of these cases, this Court set aside a *rezoning* of property by the Commissioners of Anne Arundel County, because of a failure to show error in the original zoning or a substantial change in the character of the neighborhood; and, in the later case, we held that a *rezoning* of property in Baltimore so as to permit the operation of a funeral home was invalid for the same reasons. But these cases have little, if any, applicability to the facts of the instant case. Section 17 of Article 40, which has a vital and controlling influence upon the decision here, was not involved in either of those cases. Questions of reclassification, or rezoning, were there considered and determined, but here we have no property rezoned, or reclassified, nor do we have any question of piecemeal rezoning or spot zoning involved. We have here an ordinance which provides for the establishment, maintenance and regulation of an open area parking space in a Residential and Office Use district. Since the validity of Section 17 is not attacked and it specifically permits the passage of such an ordinance when it will "benefit the health, safety or general welfare of the community," the question for us to decide narrows to whether or not the evidence discloses that it is fairly debatable whether Ordinance 1582 will benefit the health, safety or general welfare of the community, or was the action of the Mayor and City Council in passing said Ordinance arbitrary, capricious, discriminatory or illegal.

*American Oil Co. v. Miller, supra,* 204 Md. 39; *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 437, 121 A. 2d 249.

We begin with a presumption of reasonableness of the ordinance and any attack upon it, to be successful, must clearly and affirmatively show that it is arbitrary, capricious, discriminatory or illegal. Added to this presumption, we have the approval of the Fire Department, the Planning Commission and the Commissioner of Transit and Traffic—all experts in their specific fields. Then, we must consider the testimony offered by the opposing sides, which we deem unnecessary to set out at any great length.

We have already given the substance of the testimony offered by the opponents of the Ordinance. Mr. Bernard Manekin, a real estate broker of some 18 years experience, on behalf of the proponents, thought there was a general need for additional parking facilities in the downtown commercial area, which would continue to decline economically if such facilities were not provided. There was testimony that the merchants and commercial enterprises in the area of Howard and Monument Streets adjacent to the property affected by the Ordinance required additional parking spaces if their businesses were to remain healthy and survive the trend toward suburban and other shopping areas offering such facilities. Mr. Friedman, the assistant to the president of the Recreation Center, located at 602 N. Howard Street (which was financially interested in the Realty Company) said his company operated the largest bowling establishment in the world, with an investment of some $2,000,000. That, despite a rising interest generally in bowling, the company's business had declined in recent years, and he attributed, as the major cause of this decline, the lack of adequate parking areas close by. He stated that his company's patrons, during a normal evening, would need about 500 parking spaces; that these patrons brought business to the downtown area—to restaurants, shops and other enterprises—and they were also suffering and would continue to suffer from the decline in the Center's patronage. The testimony further disclosed that the property involved immediately adjoins a First Commercial Dis-

trict to the west and south, and the property itself was located in a Residential and Office Use district that was being used largely for rooming house operations, small apartments and offices. One expert stated that in his opinion the effect of the Ordinance would not be to lessen property values in the vicinity, but would tend to have a "positive" effect thereon.

The chancellor found from the evidence that the question as to whether the permission to park automobiles on the property would benefit the health, safety or general welfare of the community was fairly debatable, and we agree. The phenominal growth of private ownership of automobiles in recent years, causing a shortage of adequate curb parking space with resultant traffic congestion, is an acute problem in every large city in this country today; and the solving or partial solving of such problems deals specifically with the health, safety and general welfare of a community; and, as indicated above, the evidence, we think rendered the decision of the Mayor and City Council, at least, fairly debatable. We shall not repeat the testimony, nor prolong this opinion further. When we determine that the propriety of the action of the Mayor and City Council, sitting in its legislative capacity in a matter such as is here involved, was fairly debatable, and consequently not arbitrary, capricious or discriminatory, it is our duty to affirm.

*Order affirmed, with costs.*