PRESSMAN ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 217, September Term, 1959.]

332

*Decided April 25, 1960.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert C. Prem* and *H. Warren Buckler, Jr.,* with whom was *Hyman A. Pressman* on the brief, for appellants.

*William L. Marbury* and *John Martin Jones, Jr.,* with whom were *Piper & Marbury* on the brief, for Associated Dry Goods Corporation, Gorn Brothers, Inc., Hatton Homes, Inc., Walter J. Crismer and Mary J. Crismer, appellees.

*William W. Cahill, Jr.,* and *Albert L. Sklar,* with whom were *William J. Pittler, Sklar & Sullivan, Leonard Weinberg,* and *Weinberg & Green* on the brief, for Food Fair Properties, Inc., appellee.

*Francis X. Gallagher* and *Kenney & Gallagher* on the brief, for Associated Catholic Charities, Inc., appellee.

*Harrison L. Winter, City Solicitor,* and *James B. Murphy, Assistant City Solicitor,* on the brief for Mayor and City Council of Baltimore, and Robert G. Dietrich, Building Inspection Engineer, appellees.

*Kenneth C. Proctor* on the brief, for Gorn Brothers, Inc., appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is another shopping center case. It grows out of the proposed establishment of a large regional shopping center and an adjacent neighborhood shopping center. The complainants, now appellants, brought this suit in the Circuit Court of Baltimore City to have declared invalid three ordinances of the Mayor and City Council of Baltimore (the City) rezoning certain tracts of land in that City from Residential to First Commercial use and for injunctive relief to prevent their being carried into effect. The respondents, now appellees, are the City, its Building Inspection Engineer and parties interested as sellers or purchasers of the properties involved or as prospective lessees or occupants of structures to be erected thereon. The complainants, some sixteen in number, are taxpayers of the City and State and are or were

(with the exception of one, who is a lessee) owners of property located at varying distances from the subject properties. At the conclusion of the trial, which extended over several days, Judge Warnken delivered an oral opinion in which he upheld the validity of the ordinances; and he later signed a decree declaring them valid and dismissing the bill. The complainants appeal.

The appellees have filed a motion to dismiss the appeal on the ground that the case has become moot. They contend that, among the appellants, only the four owners of the property known as No. 4022 Brookhill Avenue, the Komitzskys and the Pressmans, had standing to contest the rezoning. Their standing was conceded because of the proximity of their house and lot to the rezoned area, this particular property being just across Reisterstown Road from a part of the shopping center site. The owners of this lot sold it pending the appeal. Two of them say they own other property about two blocks farther away. The appellees did not challenge below the standing of any of the complainants to maintain this suit, though one of them appears to have owned a property over a mile away. Some others hold property within about one to four blocks of the highway opposite the site in question. Because of the absence of any objection below to their right to sue, there has been no determination as to any special damages which they, or any of them, might suffer, which would enable them to maintain this suit in equity to redress what they allege to be a public wrong.

Though the evidence is scanty to show any special damages (cf. *Loughborough v. Rivermass,* 213 Md. 239, 131 A. 2d 461), we think that the appellees' objection as to the interest of most of the opposing parties, made as it is for the first time in this Court, comes too late to warrant a dismissal of the appeal as to them. (It does not raise any question of jurisdiction to hear and determine the case.) See Maryland Rules, Rule 885; Miller, *Equity Procedure,* Sec. 76. Cf. *Close v. Southern Md. Agricultural Asso.,* 134 Md. 629, 108 A. 209. And see *Bauernschmidt v. Standard Oil Co.,* 153 Md. 647, 139 A. 531; *Weinberg v. Kracke,* 189 Md. 275, 55 A. 2d 797; *Crozier v. Commrs of Prince George's County,* 202 Md.

501, 97 A. 2d 296; *Loughborough v. Rivermass, supra; City of Baltimore v. N. A. A. C. P.,* 221 Md. 329, 157 A. 2d 433; all dealing with standing to sue in equity to redress public wrongs, all but the first of which are directly concerned with zoning matters.

As to two of the complainants, the Komitzskys, it does not appear that they have any further interest in the case since the sale of No. 4022 Brookhill Avenue. The appeal will, therefore, be dismissed as to them. Cf. *Windsor Hills Imp. Ass'n v. Mayor & C. C. of Baltimore,* 195 Md. 383, 73 A. 2d 531. See *Alleghany Corporation v. Aldebaran Corporation,* 173 Md. 472, 196 A. 418 (case moot because of action after appeal).

The proposed regional shopping center is intended to occupy an area (referred to as Tract One) consisting of about 61 acres. It is dealt with by two of the three ordinances here under attack, Nos. 1929 and 1930. Tract One has a frontage of about 1800 feet on the west side of Reisterstown Road and of about 1400 feet on the north side of Patterson Avenue.[1] Reisterstown Road is a principal four-lane highway, about 80 feet wide, leading from the northwestern suburban area into the City of Baltimore. The subject properties are near the northwestern corner of the city. The proposed neighborhood shopping center (Tract Two), dealt with by Ordinance No. 1931, adjoins Tract One to the north, and has a frontage of about 700 feet on Reisterstown Road and a depth of about 570 feet.[2]

Tract One is owned in part by The Seton Psychiatric In-

---

1. Reisterstown Road actually runs northwest-southeast along the subject properties, and Patterson Avenue meets it approximately at a right angle at the eastern corner of Tract One. For convenience and simplicity we shall treat Reisterstown Road as if it ran north and south and Patterson Avenue as if it ran east and west.

2. A map filed as an exhibit indicates that one corner of this area now occupied by a gasoline station on a lot fronting about 175 feet on Reisterstown Road and about 150 feet deep, which adjoins Tract One, is not affected by the rezoning under attack. It also shows a street which separates one part of Tract Two adjoining Tract One from the balance of Tract Two.

stitute, which owns and operates a mental institution on the south side of Patterson Avenue, and in part by Associated Catholic Charities, Inc., both of which are appellees. The latter owns and operates an infant asylum on adjoining land which it owns lying in the relatively narrow strip between Tracts One and Two to the east, Patterson Avenue to the south and the tracks of the Western Maryland Railway to the west. There are some plans under which the use of this asylum may be discontinued. The railway line runs nearly parallel with Reisterstown Road, and a strip along it 200 feet wide is zoned Second Commercial. Land between Tracts One and Two and this strip along the railroad is zoned Residential. Food Fair Properties, Inc. (Food Fair), one of the appellees, proposes to develop the regional shopping center covered by Ordinance No. 1930. Associated Dry Goods Corporation (trading locally as Stewart & Co. and referred to below as "Stewart's"), another appellee, proposes to build a warehouse in the northwest corner of Tract One (covered by Ordinance No. 1929) and to operate a department store in the regional shopping center. May Department Stores Company proposes to operate another department store in that center. It has participated in the case on the basis of that interest, though it has not been formally made a party.

Tract Two is owned by Gorn Bros., Inc., another appellee, and by others, who have also participated in the case, though they have not formally been made parties. The owners of Tract Two propose to develop it as a neighborhood shopping center.

Along the entire frontage of the subject properties on Reisterstown Road (including the filling station) the zoning classification prior to the passage of the contested ordinances was First Commercial for a depth of 150 feet. The same classification prevailed and continues to prevail for a like depth on the east side of Reisterstown Road opposite Tract One; and, with the exception of one block (on both sides of Brookhill Avenue, where residences have been built in a Commercial area), the land is used mainly for commercial purposes, with a few vacant lots.

Opposite Tract Two, the area to the east of Reisterstown Road is zoned Residential and is so used.

South of Patterson Avenue, land along each side of Reisterstown Road is zoned First Commercial for a depth of at least 150 feet on each side for a distance of some two and a half miles. For perhaps a total of a mile and a half of this distance (broken into two parts) the First Commercial zone fronting on the west side of Reisterstown Road backs directly on a Second Commercial zone extending to (and across) the railway line. Immediately to the south of Patterson Avenue (across from Tract One) is an area zoned Residential, roughly 1200 by 1500 feet, extending about four blocks southward and lying between the Second Commercial strip along the railroad and the First Commercial strip along Reisterstown Road.

To the north (actually northwest) of the subject properties there is a small area in the City of Baltimore which is zoned Residential. The western boundary of the City is only about 300 feet from Tract Two at its nearest point. It is about 600 feet to that boundary along Reisterstown Road; and just inside the line there is another bit of First Commercial zoning on each side of that highway. Between that area and a point opposite the gasoline station at the south end of Tract Two, land to the east of Reisterstown Road is zoned Residential. All of the appellants reside on or own (or owned) property east of Reisterstown Road—one of them fully a mile away from the subject property.

The basic Baltimore Zoning Ordinance was adopted in 1931. It included a considerable amount of First Commercial strip zoning along major traffic arteries, including Reisterstown Road. This pattern has continued, though the expert testimony in this case makes it clear that such strip zoning is no longer considered good zoning. The actual development in the neighborhood of the subject properties, as shown in this case, seems to confirm present expert views. As a matter of history, zoning has preceded planning in Baltimore, and no land use master plan for the City has yet been promulgated. In these circumstances, the zoning map, as originally adopted and as from time to time amended, has had to do double duty by serving not only as a zoning map, but also as a "compre-

hensive plan." [3] In the trial court the appellants pressed objections to the ordinances in question on the ground that they were invalid because of the absence of a comprehensive land use plan, but they have expressly determined not to press such an objection on appeal and have thereby abandoned it. On the general subject of what constitutes a "comprehensive plan", see Haar,[4] *"In Accordance with a Comprehensive Plan,"* 68 Harvard L. Rev. 1154; *Anne Arundel County v. Ward,* 186 Md. 330, 46 A. 2d 684; *Huff v. Board of Zoning Appeals,* 214 Md. 48, 133 A. 2d 83; *Hewitt v. County Comm'rs of Baltimore County,* 220 Md. 48, 151 A. 2d 144; *Trustees of McDonogh Educational Fund and Institute v. Baltimore County,* 221 Md. 550, 158 A. 2d 637. The appellants likewise expressly disclaim any contention in this Court based upon possible increase in traffic.

The appellants press three other contentions: first, that Ordinances Nos. 1929 and 1930 are invalid because based upon a contract between their sponsors and the City; second, that all three ordinances are invalid because there has been no showing of error in the original zoning plan or of such change in conditions as would warrant a departure from it; and third, in substance, that the ordinances constitute spot zoning passed for the benefit of their sponsors, without reference to a comprehensive zoning plan or the general welfare. We shall not take these questions up in the order stated, but will consider first the questions of original error or change, next the question of spot zoning, and finally the appellants' major contention relating to contract, the facts as to which will be stated when we reach that contention.

This case illustrates, as do a number of others coming to this Court, that shopping centers were not thought of when zoning regulations were first adopted for a number of the subdivisions of this State. There is no serious controversy in this case over the proposition that commercial strip zoning, such as that along Reisterstown Road, has proved undesirable un-

---

3. A master plan long in contemplation and long in course of preparation is reported to be nearing completion.

4. Professor Haar testified as an expert witness for the appellees in this case.

der present day conditions. The shopping and motoring habits of people are quite different today from what they were in 1931. Popular desire or need for large shopping areas and the necessity of adequate off-street parking facilities in connection therewith now seem to be generally recognized. However desirable commercial strip zoning along arterial highways may have appeared in 1931, there is ample evidence in this case to support the view that it has not stood the test of time and experience. Whether this should be regarded as an error in original zoning or the result of changed conditions may be a matter of a choice of words or of approach. In either event, a contention that the action of the legislative body in rezoning these properties is devoid of support, simply cannot be sustained. That the rezoning of this one particular area would not correct a more or less citywide error or maladjustment seems of no significance. A correction in part seems preferable to none; and to defer any correction anywhere in the City until a complete correction of all errors or maladjustments of the same kind is made seems completely impractical as a matter both of expense and of dislocation of business, and we know of no rule of law which would require it. It was the appellants' burden on this phase of the case to show lack of error in original zoning and the absence of change in conditions so as to upset the presumption in favor of the validity of the legislative action. No extensive citation of authorities on this point would seem useful. See, among other cases: *Eckes v. Board of Zoning Appeals,* 209 Md. 432, 121 A. 2d 249; *Muhly v. County Council for Montgomery County,* 218 Md. 543, 147 A. 2d 735; *Fallon v. Mayor, etc., of Baltimore,* 219 Md. 110, 148 A. 2d 709.

We also find the appellants' contention that the rezoning is invalid spot zoning because it is solely for the benefit of the proponents and hence is not in accordance with a comprehensive zoning plan or the general welfare, is not sustainable. Doubtless the proponents deemed it to their advantage to seek and obtain the rezoning, and it may very well be. Certainly, they would be unlikely to venture the large amounts of money required for the establishment of shopping centers unless they so believed. However, the very basis of their belief is study

and research to satisfy themselves that a public demand for the shopping facilities which they propose to offer exists in the area in question. On the record before us we could not say that the Chancellor was in error in finding that the City Council's action in rezoning these properties was neither arbitrary nor discriminatory in favor of the proponents—in other words, that this is not a case of invalid spot zoning. Quite to the contrary, there is substantial evidence to show that the rezoning will be beneficial to the public and to the neighborhood and will not depress values of nearby properties. See *Eckes v. Board of Zoning Appeals, supra; Temmink v. Board of Zoning Appeals,* 205 Md. 489, 109 A. 2d 85; *Loughborough v. Rivermass, supra,* 213 Md. at 242. The absence of a general land use plan does not mean that no change in zoning can be made because it cannot be in accordance with a comprehensive plan, as that term has been applied by this Court practically, and almost necessarily, where, as in Baltimore, zoning has run ahead of planning.

There is here, we may add, no radical departure from what has gone before. True, commercial development has not actually spilled over into an area zoned residential in the area with which we are now concerned; but that signifies little more in this case than that the zoning ordinance has been regarded and adhered to rather than violated. If that fact were enough to prevent revision, zoning would indeed be static. It cannot be so. *Muhly v. County Council for Montgomery County, supra,* 218 Md. at 547. Here there is already a 150-foot strip along the main highway which has been zoned since 1931 as Commercial. These lots are deepened—in the case of Tract One very materially, in the case of Tract Two not so much. Stores could be built in the previously existing 150-foot strip; but if this were done, no room, or no adequate room, would be left for parking. The proposed arrangement would move the stores back from the highway and away from the objecting neighbors and would furnish a large parking space. It would almost certainly be a far more pleasing development than an extension of the existing type of commercial strip development along this road in the general neighborhood.

The appellants place their chief emphasis on the contention

that Ordinances Nos. 1929 and 1930 are invalid because of an agreement (the Agreement) entered into between the City of Baltimore, acting through its Planning Commission (the Commission) and Food Fair and Stewart's, to which the sellers of Tract One are, in accordance with a stipulation, to be regarded as parties for purposes of this case.

When a rezoning ordinance is introduced in the City Council, it is referred for a report to the Board of Municipal and Zoning Appeals and to the Planning Commission (Code (1957), Art. 66 B, Sec. 5. See also Baltimore City Charter, Sec. 121.) Such an ordinance is also referred to the Department of Traffic and Transit. The City Council is not bound by the reports or recommendations of any of these departments or agencies. *Baylis v. City of Baltimore,* 219 Md. 164, 168, 148 A. 2d 429. All of the ordinances here involved were in fact approved by all of these authorities. Two of them, which became Nos. 1929 and 1930, dealing with Tract One were approved by the Planning Commission on condition that Food Fair and Stewart's enter into an agreement with the City relating thereto. The Commission's approvals of the original ordinances, which had been introduced in October, 1958, were given on November 13, 1958. Its report to the Council dealing with what became, when enacted, Ordinance No. 1929, referred to its report on what became No. 1930. The report relating to the latter was the major report. Each report quotes an excerpt from the minutes of the meeting of the Commission at which these ordinances were approved setting forth the terms to be contained in the Agreement. The Agreement itself recites that its execution was a condition to the approval of the Commission. A member of the City Council is an *ex officio* member of the Commission. So is the Mayor (Baltimore City Charter, Sec. 102). The Agreement purported to be between the Mayor and City Council of Baltimore (which is the full corporate title of the City), Food Fair and Stewart's. It was approved as to form and legal sufficiency by the Acting City Solicitor and an Assistant City Solicitor on November 14, 1958. It is dated November 17th, 1958.

These Ordinances (as well as No. 1931) were passed in

April, 1959, and were approved by the Mayor on April 27, 1959. None of them makes any reference to the Agreement. We think it reasonable to suppose that its purport was known to the City Council.

The *Baylis* case, above cited, which is the principal foundation of the appellants' argument on this aspect of the case was decided by this Court on February 18, 1959. It reversed a decree of the Circuit Court of Baltimore City. The appeal therein was pending in this Court when the Agreement was entered into, and the decision of that case preceded the passage of the ordinances here attacked by about two months; and we think that it may safely be assumed that the City Council was also aware of the *Baylis* decision.

The resolution of the Commission adopted on November 13, 1958, relating to the Agreement was, in substance, as follows:

> "That this Commission's action of approval is based upon an agreement being entered into between the transferees of the present record owners and the * * * City * * * providing that in consideration of the Planning Commission's approval of the rezoning to First Commercial of the property described in Ordinances numbered [1929 and 1930] for the purposes of building a regional shopping center, as generally proposed in the plans submitted, if it is subsequently determined that this project cannot be carried out as substantially proposed and in that event the City takes action to repeal the rezoning ordinance to the end that the property will revert to its present existing uses, the transferees will not interpose. objections to the passage of the repeal ordinance, and that the agreement further [provide that] the transferees * * * agree: To lay out and develop the * * * property as a planned shopping center in accordance with plans approved by the * * * Commission * * *."

The Agreement embodied the terms stated in the above resolution. It further provided that upon substantial per-

formance by Food Fair or Stewart's (or both of them) of the provisions of the ordinances relating to the respective properties upon which they proposed to build, the Agreement should become null and void as to the respective properties, and that the Agreement should bind and should inure to the benefit of the parties, their successors and assigns.

The ordinances themselves make no reference whatever to the Agreement. Apart from whatever inference may be drawn from the City Council's knowledge of the existence or purport of the Agreement, there is nothing to show that the City Council was actually influenced in passing the ordinances by the existence of the Agreement. It might, perhaps, as readily be inferred that, with knowledge of the *Baylis* case, the City Council deliberately decided to place no reliance on the Agreement. Whatever the reasons for the Council's omission of reference to the Agreement may have been, it is clear that in this case, unlike *Baylis; Rose v. Paape,* 221 Md. 369, 157 A. 2d 618; and *Carole Highlands Citizens Ass'n v. Board, etc., Prince George's County,* 222 Md. 44, 158 A. 2d 663, the legislative body has not itself sought to impose conditions and has certainly not stated that its own action is dependent upon compliance with any conditions.

In the instant case, the conditions sought to be imposed by the Planning Commission are, in brief, merely that the sponsor of the large shopping center and the prospective builder of the warehouse or service building should go ahead with the proposals which they had submitted and that their plans should be subject to approval by the Commission, and that if the sponsor and builder should fail to go ahead as proposed, they would not oppose the repeal of the rezoning ordinances and the restoration of the previous residential rezoning, if the City Council should see fit to take such action. No matter how moderate, reasonable or even desirable these conditions may be, we find no authority for their imposition by the Planning Commission. The State Enabling Act (Code (1957), Art. 66 B, Sec. 7(g)(4)) authorizes a zoning board (except in two counties) to "approve buildings, and uses limited as to location under such rules and regulations as may be provided by ordinance of the local legislative body," but no such au-

thorization extends to the Planning Commission, nor does the Baltimore City Zoning Ordinance undertake to confer power to impose such conditions in a case like the present upon the Planning Commission, even if it could do so.[5] Cf. *Kublitsky v. Zimnoch,* 196 Md. 504, 507, 77 A. 2d 14.

We thus have a situation in which the City Council was not bound by the recommendations of the Planning Commission, in which that Commission sought to impose conditions that it was not authorized to exact and that are therefore invalid, and in which the Council did not undertake or attempt to incorporate the invalid conditions in its rezoning ordinances and did not even refer to them. A purported grant of rezoning might be invalid because actually based upon conditions destructive of uniformity of zoning, even though the rezoning ordinance itself made no express reference to such conditions, as in *Houston Petroleum Co. v. Automotive Products Credit Ass'n* (N. J. Ch.), 78 A. 2d 310, affid. 87 A. 2d 319. That, we think, is not shown here. On the contrary, in the circumstances of the present case, it would, in our judgment, be

---

5. In *Reus v. Mayor, etc., of Baltimore,* 220 Md. 566, 155 A. 2d 513, an ordinance permitted the establishment of a parking area in a Residental and Office Use district. This ordinance was introduced, referred and enacted in compliance with the express terms of Sec. 17 of the general Zoning Ordinance (Baltimore City Code (1950), Art. 40, as amended in 1953). That Section permitted the enactment of such an ordinance when such use would benefit the health, safety or general welfare of the community. It required, *inter alia,* that any such ordinance be referred to the Planning Commission. That Commission recommended the approval of the ordinance in question subject to conditions as to screening, which were incorporated in the ordinance as enacted. Under Section 17 such conditions might be imposed as the Mayor & City Council might determine. *American Oil Co. v. Miller,* 204 Md. 32, 102 A. 2d 727, and *Baylis* were distinguished on the ground that under Section 17 of the general ordinance, the validity of which was not contested, the use in question was permissible in a district of the classification there involved and, hence, that no question of rezoning or reclassification was presented. There would seem to be some similarity between the situation in *Reus* and that presented in the case of a special exception. Cf. *Huff v. Board of Zoning Appeals,* 214 Md. 48, 62, 133 A. 2d 83, 91.

merely speculative to impute to the legislative body an intention to impose conditions or to make them the basis of its action in rezoning the property.

The disruption of uniformity of zoning, which is a major vice of rezoning upon conditions *(Baylis v. City of Baltimore, supra)* has already been dealt with in our consideration of spot zoning. So has the question whether or not the rezoning is in the interest of the sponsors of the project rather than of the public. The existence of the invalid Agreement under which the Commission sought to impose conditions does not alter our view as to either.

We find none of the objections of the appellants well taken, and that two of the appellants have no present interest in the case. Accordingly, the appeal of the latter will be dismissed and decree will be affirmed as to the other appellants.

> *Appeal of Abraham and Dora Komitzsky dismissed as moot; decree otherwise affirmed; the appellants to pay the costs.*