## COSTELLO ET AL. *v.* SIELING

[No. 223, September Term, 1959.]

*Decided June 15, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*C. Edward Nicholson* and *T. Hunt Mayfield,* with whom was *Reginald D. Malloy* on the brief for the County Commissioners of Howard County, for the appellants.

*Charles E. Hogg* for the appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal is from a decree which declared a rezoning resolution of the Board of County Commissioners of Howard County (the County Commissioners) null and void. Edward Costello and Dallas M. Grady (the proponents) and the County Commissioners seek a reversal of the decree. Henry J. W. Sieling (the protestant) is the sole appellee.

By a resolution adopted January 18, 1955, the County Commissioners amended the county zoning regulations so as to create two additional zoning districts designated as Tourist Accommodation Districts. A T-1 district, among other uses, permits a use for "motels and tourist cabins and hotels." A T-2 district, among other uses, permits a use for a "trailer coach park," sometimes herein referred to as a "trailer park" or "park." On March 17, 1959, a 92-acre tract located in the sixth election district of Howard County—the subject of this rezoning controversy—was reclassified by the County Commissioners from an "R" (Residential) district to a T-2 (Trailer Coach Park) district, upon the application of the proponents, who are the contract purchasers of the tract. The tract is surrounded by and adjacent to properties devoted to residential and agricultural uses and to the operation of

sand and gravel pits. The agricultural uses, with one exception, are not extensive. The exception is an 878-acre farm owned by the protestant. The principal improvements on this farm are located approximately a half-mile from the southern end of the rezoned tract. That portion of the farm located immediately opposite the proposed trailer park is wooded. An adjacent 4-acre parcel of land also owned by the protestant is improved by a warehouse used for commercial purposes.

Claiming that the trailer park would depreciate the value of his farm property, the protestant filed a bill of complaint in the Circuit Court for Howard County attacking the validity of the rezoning resolution as well as the constitutionality of the resolution which created the tourist accommodation districts. The case was submitted to the lower court on the record of the proceedings before the County Commissioners and on the exhibits offered and admitted as evidence in that court.

The proponents propose to use the rezoned tract as a park for house trailers, designed to accommodate in excess of eight hundred housing units. They also propose to provide "roads, public sewers or a sewer established and maintained by [them]selves * * * [and] a water system, swimming pool, playgrounds, an auditorium and an administration building;" and also a fountain and a loggia for adornment. The proponents also testified that they did not intend to permit any school-age children to permanently reside in the park.

There was testimony to the effect that the existing trailer parks were inadequate to meet the needs of the community, but this was contradicted by the owners of two of the larger trailer park areas. There was also expert testimony to the effect that the establishment of the park, with one exception, would not adversely affect the surrounding properties and might be beneficial to some of them in many respects. The exception was an adjoining 260-acre tract which was being held by the corporate owners for future residential development. The owner of the large adjoining farm, and other protestants in the area, who did not appeal to the circuit court, objected strenuously to the reclassification on the

ground that it would have an adverse effect on their properties and the community. The Planning Commission of Howard County (the Planning Commission), though it had approved the establishment of similar parks in other parts of the county, recommended denial of the application for this trailer park because it would concentrate too many occupants in a small area; because the park would create a demand for additional community facilities greater than that required for normal half-acre residential development; because the 800-plus trailers would create major water supply and sewage disposal problems; and because the tract was more desirable as sites for the half-acre-type of residential development for which it was originally zoned. The president of the Board of Education testified that if they did not "eliminate all children" of school age it would put a tremendous burden on county school facilities.

The County Commissioners, in adopting the contested reclassification, noted that the trailer park was not improperly located because the use—a "housing" one—was closely related to a residential use, and then stated, as reasons for adopting the rezoning resolution, that the testimony produced by the proponents, though disputed to some extent, indicated a need for the reclassification; that the testimony, except as to one property, indicated that adjacent properties would not be adversely affected; that the buildings engineer could not issue a permit until the application conformed to the requirements of the Planning Commission and the County Health Officer; and that the burden imposed on the county would be no greater than that which might have been imposed by the creation of a residential subdivision since the proponents would be required to install and maintain at their own expense the "water, sewerage and roads" in the trailer park.

The chancellor, in declaring the rezoning resolution invalid, did so because he found that the T-2 classification was not analogous to a special exception (as in the *Huff* case, *infra*) and because he further found there was no substantial evidence before the County Commissioners of either a mistake in the original zoning or a substantial change in the character of the neighborhood.

The proponents make three claims: (i) the chancellor was in error in concluding that the reclassification could not be treated as analogous to a special exception and that rezoning could only be justified on the basis of a mistake or change; (ii) the chancellor was in error in concluding that there was no debatable evidence of either an original mistake or a substantial change; and (iii) the chancellor was in error in concluding that the protestant had standing to sue.

With regard to the last point, it appears that the protestant may have had standing to sue. In any event, since the question was not raised by the pleadings, there is a presumption that the objection was waived, and, as it is not jurisdictional, we shall not consider it further. See *Pressman v. Baltimore City*, 222 Md. 330, 160 A. 2d 379 (1960).

As to the principal questions, we think the principles enunciated by Judge Hammond for this Court in *Huff v. Board of Zoning Appeals*, 214 Md. 48, 133 A. 2d 83 (1957), are controlling here in that the granting of the trailer park classification was somewhat analogous to a special exception when applied to a former residential zone. Moreover, since the trailer park area is also residential in character, it appears that the reclassification is neither incompatible nor inconsistent with the remainder of the areas in the residential district. In these circumstances, the questions of mistake and change are not controlling.

The chancellor did not decide the constitutionality of the resolution creating the tourist accommodation districts raised, below, and the question has not been directly raised here, nevertheless, the validity of the rezoning resolution, which is squarely before us, necessarily puts in issue the power of the County Commissioners to enact the amended regulations which added the newly created zoning districts. The first question then, is whether the County Commissioners had authority to create new zoning classifications—such as the T-1 and T-2 zones—within the framework of the original master or comprehensive zoning plan of Howard County so as to provide that certain properties in other former classifications might be reclassified or rezoned for tourist accommodation uses. That there was such authority there is not the slightest

doubt. Chapter 19 of the Extraordinary Session of 1948 added five new sections (§§ 360 to 364, inclusive) to Article 14 (Howard County) to the Code P. L. L. (1930), under the sub-title "Zoning." Section 361 specifically provides that the County Commissioners shall determine the manner in which the regulations, restrictions and district boundaries shall be established and enforced and "from time to time amended, supplemented and changed."

In recommending the adoption of tourist accommodation districts, the Planning Board recognized, among other things, that the location of trailer camps or parks in M-1 and M-2 districts, to which they had been formerly relegated, was incompatible with the uses permitted in industrial districts and that tourist accommodations, such as are permissible in T-1 and T-2 zones, being residential in character and more closely related to residential uses than ordinary business and manufacturing uses, ought to be located in residential areas removed from the heavily traveled highways so as to provide greater protection for the people using such accommodations, and submitted to the County Commissioners certain proposed amendments to the county zoning regulations, which were subsequently adopted.

In addition to the uses permitted in the residential districts and those permitted in a T-1 district—such as motels, tourist cabins, hotels and restaurants, the regulations for the newly created T-2 or trailer park zone (§ 7.6 of the zoning regulations) also permit:

> "Trailer coach park[s], provided that the *design, layout and ingress roads* shall be approved by the Planning Commission and provided further that written approval of the Health Officer of Howard County, containing necessary requirements for maintaining health standards shall be filed with the Buildings Engineer before the permit is issued. No permit shall be issued by the Buildings Engineer until the application conforms with the requirements of the Planning Commission and the County Health Officer." [Emphasis added.]

The height regulations are the same as in B-2 districts; and the area regulations applicable to trailer parks forbid (a) the use of a lot of less than 3 acres; (b) the erection of a building or placement of a trailer coach within 50 feet of a street or road; (c) the placement of a trailer coach within 20 feet of a side line; (d) the placement of a trailer coach within 25 feet of a rear line; and (e) the coverage of more than 50% of the park area with buildings or trailer coaches.

The County Commissioners, by incorporating the additional regulations concerning tourist accommodations into the master or comprehensive plan in line with the express purposes of the Howard County enabling act [Code P. L. L., Art. 14, § 360] to promote the "health, safety, morals and general welfare * * * and * * * the orderly growth of [the] * * * [c]ounty in the interest of all its inhabitants," obviously intended that the use of land within the county should be such as would accomplish the most beneficial and appropriate uses consistent with maintaining the public interests of all the people as well as safeguarding the private interests of individual owners. In so doing, with respect to uses for housing purposes, it was provided that the standards or criteria for a trailer park— that is, the design and layout of the park and the roads leading into it as well as the health requirements and the usual provisions regulating height and area—should be met before a rezoning resolution allowing the establishment of a trailer coach park in the county would become effective. Since the point was not raised, we shall assume, as did the chancellor, that there was no improper delegation of power to either the Planning Commission or the County Health Officer. But compare *McBriety v. City of Baltimore,* 219 Md. 223, 148 A. 2d 408 (1959), and the cases therein cited, where it was held that a municipal law-making body may vest its administrative officers and agencies with a measure of discretionary power and authority to make rules and regulations relative to the enforcement of the law for which such officer or agency is responsible. See also *Huff v. Board of Zoning Appeals, supra,* p. 61; *Montgomery County v. Merlands Club,* 202 Md. 279, 96 A. 2d 261 (1953). The fact that the Planning Commission initially declined to recommend the rezoned tract for a

trailer coach park would not relieve it of the duty of performing its responsibilities under § 7.6, *supra,* of the zoning regulations.

As to the propriety of locating T-2 areas in residential zones, it is apparent, since there was no unzoned land in the county, that the T-1 and T-2 zones must be carved out of some land use district or districts originally zoned for other purposes. Under these circumstances, there is no doubt that if the area selected serves a public rather than a strictly private purpose, so as to exclude it from the category of illegal "spot zoning," and is also such that it is fairly debatable whether it is appropriate as a place for the new use, so that the placement cannot be deemed to be arbitrary or capricious, then the rezoning should be upheld. Moreover, since the amended zoning regulations did not limit the location of a T-2 zone—or a T-1 zone either for that matter—to areas formerly zoned residential, the same rules as to debatability and legislative whimsicalness are likewise applicable to the placement of trailer parks in other zones. Indeed it appears that six out of seven areas zoned T-2 since the creation of the tourist accommodation classifications have been in M-1 and M-2 zones as was formerly required, but the presumption is that such placements met the required tests.

We are not persuaded by the argument of the protestant that the differences between the other classifications, especially the residential ones, and the newly created tourist accommodation zones, were so slight that the distinctions were meaningless. Keeping in mind the fact that the tourist accommodation zones under attack do no more than substitute an unconventional type of housing for the conventional types usually found in a given community, we think it is clear that only slight distinctions or gradations—if indeed any were needed other than the specially required planning of the design, layout and roads—in the specified standards were necessary in order to establish a tourist accommodation use within the confines of any other zone.

Under these circumstances, we think the prescribed standards, though not elaborate, are sufficiently definite and extensive to achieve the purposes the legislative body intended

to accomplish when the T-2 classification was adopted. Clearly they are not in that "vague and illusive" category frowned upon in the *Huff* case, *supra*. When the standards which we are now considering are fully and properly applied, as they doubtless will be or a permit to begin construction of the trailer coach park will not be issued by the buildings engineer, we see no reason why the protection and enjoyment of all interests, public and private, should not continue as they had before the reclassification was granted.

As we see it, the very determination of the County Commissioners that there was a real need for the passage of special regulations concerning the accommodation of tourists—irrespective of the duration of their stay—raised a strong presumption that the action was correct. Under similar circumstances, it has been said that the burden is on the one who attacks such legislation "to show—almost to demonstrate—that it was wrong." *Huff v. Board of Zoning Appeals, supra,* p. 59; *Grant v. Mayor, etc., of Baltimore,* 212 Md. 301, 129 A. 2d 363 (1957); *Wakefield v. Kraft,* 202 Md. 136, 96 A. 2d 27 (1953). This the protestant failed to do.

Since the reclassified use in this instance is not incompatible with the residential uses to which the remainder of the district is restricted and was not made for the primary benefit of a private owner but for the public good as well, we think the rezoning for use as a trailer coach park was valid. See 2 Metzenbaum, *Law of Zoning,* p. 1524 (2d ed. 1955) ["the relevant inquiry is *not* whether the particular zoning under attack consists of areas fixed within larger areas of a different use, but whether it was accomplished for the benefit of individual owners rather than pursuant to a comprehensive plan for the general welfare," citing *Rogers v. Village of Tarrytown,* 302 N. Y. 115, 96 N. E. 2d 731 (1951)]. With regard to this same principle when applied to smaller areas within a zone devoted to other uses, compare *Huff v. Board of Zoning Appeals, supra,* p. 57; *Temmink v. Board of Zoning Appeals,* 205 Md. 489, 109 A. 2d 85 (1954); *Offutt v. Board of Zoning Appeals,* 204 Md. 551, 105 A. 2d 219 (1954); *Cassel v. Mayor, etc., of Baltimore,* 195 Md. 348, 73 A. 2d 486 (1950).

Finally, to repeat what was said earlier in this opinion, the rezoning in this case, being somewhat analogous to a special exception, needed only to have been fairly and reasonably within the scope of the regulations set forth for the newly created T-2 zone to render the reclassification valid; and it was not necessary to consider whether there had been either a mistake or change in the original zoning. *Huff v. Board of Zoning Appeals, supra,* p. 62.

Since the rezoning granted by the County Commissioners was not improper, the decree must be reversed.

> *Decree reversed; the appellee to pay the costs.*