TOOMEY ᴇᴛ ᴀʟ. *v.* GOMERINGER ᴇᴛ ᴜx.

[No. 301, September Term, 1963.]

458

*Decided July 3, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Eugene P. Smith,* with whom was *Robert J. Romadka* on the brief, for the appellants.

*Eugene G. Ricks,* with whom was *Michael Paul Smith* on the brief, for the appellees.

BRUNE, C. J., delivered the opinion of the Court.

Objecting neighbors (the protestants) appeal from an order of the Circuit Court for Baltimore County (Berry, J.) reversing an order of the County Board of Appeals and granting a petition of the appellees (the applicants) for the reclassification of certain property, which petition the Board had denied. The reclassification had originally been granted by the Zoning Commissioner, and his order had in turn been reversed by the Board. The applicants are the owners and prospective sellers of the property in question. The contract purchaser, owner of a chain of food stores, is not a party to these proceedings, but two of its representatives testified before the Board.

The applicants (appellees) have filed a motion to dismiss the appeal, which was heard immediately prior to the argument on the merits. The motion raises two contentions: (a) that the protestants were too late in intervening and answering the appeal from the Board's order in the Circuit Court, and (b) that they have no sufficient interest to maintain this appeal.

The first of these is based upon Maryland Rule B9, which is one of the Rules relating to appeals from administrative agencies contained in subtitle B of the Rules governing Special Proceedings. This Rule provides in part that a party before the agency who desires to participate in the appeal shall file an answer "within thirty days after the filing of the petition of appeal, or such longer or shorter time as may be fixed by the Court." This contention was raised by a preliminary motion in the trial court, which was heard and denied by Judge Turnbull. We think that his ruling was correct.

Though ordinarily an answer should be filed within the thirty days, we think that Rule B9 is not inflexible and mandatory as to the thirty day period. It is not shown that the applicants were prejudiced by the delay from early June to early August in the filing of the answer, and the delay seems to have been due at least to some extent to delay on the part of the applicants in furnishing the protestants with a copy of the petition of appeal as had been promised. The provisions of Rule B4 a and b with regard to the time for filing an appeal are generally similar to those of Rule B9 for the time of filing an answer. All use the word "shall," as does Rule B2 e, which deals in part with the time for filing a petition which, if not joined with, must follow an order for appeal. We note that Rule B4 c requires an application for extension of time for filing an order of appeal to be made within the time allowed for filing the order of appeal. There is no counterpart to this provision in Rule B9, nor is there any to Rule B5. The latter provides that the appeal shall be dismissed for failure to file an order for appeal within the time prescribed by Rule B4, or to file a petition of appeal under Rule B2 e within the time prescribed by the Rule, "unless cause to the contrary be shown." If the provisions as to time of Rule B4 a and b or of Rule B2 e were mandatory requirements, there would hardly be any necessity

for the provisions of Rule B5 for the dismissal of the appeal; and the concluding clause of that Rule shows that some elasticity is allowed if "cause" (meaning "good cause," *Merrimack Park Recreation Ass'n, Inc. v. County Board of Appeals*, 228 Md. 184, 188, 179 A. 2d 345) is shown. We accordingly hold that the time requirement of Rule B9 is not mandatory, and we think that it was within Judge Turnbull's discretion to refuse to strike out the answer of the protestants, and we find nothing to indicate any abuse of discretion on his part in so refusing. We deny the motion to dismiss insofar as it is based upon delay in the filing of the appellant's answer in the Circuit Court.

The second ground upon which dismissal is sought is in substance that the properties of the protestants are so remote from the property for which rezoning is sought that the protestants have no standing to maintain this appeal. Though the trial judge made a comment in his opinion to the effect that the protestants' properties were more than two city blocks away from the property for which rezoning was sought and "could hardly be directly affected by any permitted commercial use," no objection to their standing to participate was made in the trial court. The record shows not only that there was evidence before the Board from the protestants that the value of their residential properties would be depreciated by the proposed reclassification, but that there was testimony by the Deputy Director of Planning of the County that in his opinion the proposed extension of commercial zoning would have an impact on the surrounding residential areas and that the commercial area should not be extended in the direction proposed. There was in addition testimony by an experienced real estate broker and developer that, in his opinion, the reclassification of the property in question, at least if followed by the development and use of the property as planned by the applicants' contract purchaser, would eat into the existing residential community and would depreciate and depress the area.

In view of the above evidence we are not prepared to hold that the protestants are without standing to maintain this appeal, as not being "parties aggrieved" (see Sec. 604 of the

Baltimore County Charter [1]), particularly in view of the fact that their standing was not even challenged in the trial court. *Costello v. Seiling,* 223 Md. 24, at 29, 161 A. 2d 824; *Pressman v. City of Baltimore,* 222 Md. 330, at 334-35, 160 A. 2d 379. Cf. *Richmark Realty Co., Inc. v. Whittlif,* 226 Md. 273, at 281-82, 173 A. 2d 196, where the chancellor found on conflicting evidence that the complainants would suffer special damages from the establishment of a filling station within 300 feet of a city park and about 200 feet from the complainants' residence. The chancellor's finding, which was not disturbed by this Court, rested largely on the testimony of a real estate expert that part of the value of the property of the complainants and of other property in the neighborhood was derived from their proximity to the park and that a "chipping away" of the restrictions established to protect the areas in and around the parks would inevitably reduce the value of nearby residential real estate.

All three of the cases cited above were suits in equity, but the same test has been applied in determining who are "aggrieved" persons entitled to appeal from adverse action of a zoning body. *Pattison v. Corby,* 226 Md. 97, 172 A. 2d 490. As was there said (226 Md. at 102) : "an adjacent owner—in the sense of being near or close by—as well as an abutting owner, whose legal rights have been infringed, is an aggrieved person. But the farther a protestant resides from the zoning objected to, the more difficult it is, in the absence of other

1. We assume, without deciding, that under the Baltimore County Code (1963 Supp.), Sec. 23-27, which allows appeals to the courts to be taken "in the manner provided in Article VI of the Baltimore County Charter," the right of appeal is limited to parties "aggrieved" by the action of the Board of Appeals or of the Circuit Court, since Sec. 604 of the Charter provides for appeals only by such persons, and that the term is less broad in scope than the terms of Sec. 23-26 of the County Code which provide that "[a]ny person or persons, jointly or severally, or any taxpayer or any official, office, department, board or bureau of Baltimore County, feeling aggrieved by any decision of the zoning commissioner shall have the right to appeal therefrom to the county board of appeals." Sec. 604, as the notes of the Reporter for the Charter Revision Commission show, was intended to conform with Code (1957), Art. 25A, Sec. 5U.

pertinent circumstances, to decide whether he has standing to appeal." In the *Pattison* case the appellant's interest was held insufficient, and a similar result was reached in *Loughborough v. Rivermass,* 213 Md. 239, 131 A. 2d 461. In each of them the sufficiency of the objector's interest was challenged in the trial court. In the *Pressman* case above referred to, where the sufficiency of the complainants' interest was not challenged in the trial court, the nearest property owned by any of them was about two blocks from that being rezoned. That property was in sight of the tract being rezoned. Other complainants-appellants, whose right to sue was upheld against a motion to dismiss filed in this Court, owned properties at considerably greater distances. Our pertinent cases up to the time of the decision of *Pattison* are reviewed in the opinion in that case. We shall not review them further here. We think that the present case falls under *Costello* and *Pressman,* rather than *Pattison* and *Loughborough,* and accordingly we deny the motion to dismiss insofar as it is based upon the appellants' asserted lack of standing.

We now come to the merits of the case.

The property sought to be rezoned from R-6 (a rather high density residential classification) to B-L (a commercial use classification) has a frontage on its western side of about 107 feet along the east side of Stemmers Run Road beginning at a point about 419 feet north of the intersection of that road and the northern side of Eastern Boulevard. (Though Stemmers Run Road in this area runs somewhat west of north from this intersection and Eastern Boulevard runs almost northeast from it, we shall speak of Stemmers Run Road as running north and south and Eastern Boulevard as running east and west.) The subject property is roughly rectangular in shape with its long lines, of about 376 to 378 feet, running almost parallel to Eastern Boulevard. The contract purchaser has under lease a somewhat irregular, but generally rectangular tract, recently reclassified as B-L, south of and adjoining the subject property. This tract has a frontage of about 300 feet on Stemmers Run Road and it has access to Eastern Boulevard by two thirty-foot rights of way, one on each side of a hamburger shop fronting on Eastern Boulevard. To the west of the hamburger

shop and at the northeast corner of Stemmers Run Road and Eastern Boulevard is a gasoline filling station and to the east of this hamburger shop is a used car lot. To the east, north and west of the subject property the area is residential, zoned R-6, with the exception of three tracts which are used for schools, one of which is across Stemmers Run Road from the subject property.

We now quote from the opinion of the Board:

"The protestants pointed out that Stemmers Run Junior High School is located across Stemmers Run Road from the subject property. They testified that this two lane road is also used by the buses to Kenwood High School and an elementary school, both of which are in the neighborhood. They opposed the reclassification of this property on the grounds of increased traffic hazards and the encroachment of commercial land into a residential area with resultant adverse effect on the community.

"George E. Gavrelis, Deputy Director of Planning and Zoning, testified that 'B-L' zoning of the subject tract would result in an inharmonious land use. He further stated it would close the possibility of the land opposite the Junior High School being used for residential purposes. It was his opinion that the area is predominantly residential in nature and that the present boundary of 'B-L' is the farthest point north along Stemmers Run Road to which it should be extended. Practically the same opinion was stated by Frederick P. Klaus, an expert realtor witness.

"The principal reason advanced by the petitioner appeared to be that it needed this additional tract of ground in order to properly locate the desired size store building. Such additional land area however, would not alter the poor access lanes to the parking lot of the proposed store.

"It is the unanimous opinion of the Board of Appeals that there have been no changes in the immediate neighborhood which warrant a reclassification,

and that the petitioners have failed to show an error in original zoning. Further it is the opinion of the Board that to grant such reclassification would certainly tend to increase the traffic in the area which could result in additional traffic congestion and further, that the reclassification would be further encroachment of commercial land into the predominantly residential area which would have an adverse effect on the value of property in the community."

The record contains evidence to support the Board's findings and conclusions.

No additional testimony was taken before Judge Berry. Almost 90% of the transcript of proceedings before him (based upon lineage, treating incomplete lines as full lines) is taken up with comments, observations and some questions by the trial judge. At the outset he announced his complete familiarity with the area in question, and our review of the transcript of the proceedings before him indicates that he relied very heavily upon his personal familiarity with the neighborhood and his own views based thereon.[2]

In his formal opinion the trial judge said in part:

"All the other three corner properties at Eastern Boulevard and Stemmers Run have long been used commercially and are so zoned.

---

2. Perhaps the key to the trial judge's approach to the case may be found in the passage quoted below which occurs after the judge had spoken of the "strange arrangement" for getting in and out of the supermarket tract and that "you almost can't do anything with it the way it is set up now:

"(The Court). You can't do anything now because you are jammed up badly for space, Mr. Romadka [counsel for the protestants, who were *appellees* in the Circuit Court], I am addressing this to you, more or less because the burden is on you in this case although it would not appear from the record. I don't think anybody can build a house on this piece of property. It is much too close to all of these schools and heavy commercial development in my opinion. The one hundred and seven feet would not sell for a house and I would not live there, I am putting you on the spot, I don't believe the property can be used for residential."

"It is conceded that since the adoption of the original zoning map numerous changes have occurred in the area both as to zoning and use but, it is argued, these are referrable only to Eastern Boulevard.

"That is the real question in this case. Is the subject property really oriented to Eastern Boulevard or to the existing residential section lying to the north?

"It seems inescapable to this Court that this property is really much more oriented to Eastern Boulevard and its extensive commercial development than to the residential area lying to the north and not only that changes in the area have been sufficient to justify the reclassification but that its original zoning as residential was erroneous.

"In reaching this conclusion the Court has not overlooked the well established principles that 'zoning lines must be drawn somewhere' and the Court must not substitute its judgment for that of the Board."

Notwithstanding the trial judge's recognition of these established rules, we are forced to conclude that his decision cannot be reconciled with them. There was evidence before the Board from which it reasonably could and did reach its conclusions which we have quoted above. We therefore think that the questions before the Board were at least fairly debatable and that the trial court actually substituted its judgment for that of the Board and that in so doing it went beyond the proper exercise of its powers. See *Renz v. Bonfield Holding Co.,* 223 Md. 34, 43, 161 A. 2d 436, and cases therein cited; *Levy v. Seven Slade, Inc.,* 234 Md. 145, 198 A. 2d 267. The judgment will accordingly be reversed, with directions to reinstate the order of the Board; the costs are to be paid by the appellees. Maryland Rule 882 a. (See *Reese v. Mandel,* 224 Md. 121, 167 A. 2d 111).

> *Order reversed and case remanded for the entry of an order in conformity with this opinion; the costs to be paid by the appellees.*