FUNGER, ᴇᴛ ᴀʟ. *v.* MAYOR AND COUNCIL
OF THE TOWN OF SOMERSET, ᴇᴛ ᴀʟ.

[No. 216, September Term, 1966.]

142

144 

*Decided October 12, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Norman M. Glasgow,* with whom were *George H. Clark, Whayne S. Quin* and *Wilkes & Artis* and *William A. Linthicum, Jr.,* on the brief, for appellants.

*Alfred L. Scanlan,* with whom were *Shea & Gardner* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

The five appellants sought to construct a high-rise apartment house on part of a tract of some thirty acres they own in the Town of Somerset, a municipal corporation in Montgomery County close to the District of Columbia line. The Town had misgivings and in 1963 appellants agreed to give it a scenic easement on several acres, to convey to it in fee simple twelve acres of the thirty acres, and to execute a covenant as to the

use of the site if the Town would not oppose rezoning [1] by Montgomery County from R-60 to R-H (multi-family, high-rise, residential), and would not oppose any use permitted by the R-H classification under the then Montgomery County Zoning Ordinance. After the Town had recommended and Montgomery County had granted R-H zoning and also a building permit for a twenty-four story apartment building, the Town, claiming appellants had agreed to build only a fourteen-story building, passed an ordinance purporting to limit the height of high-rise buildings within its limits to seventeen stories or 160 feet.

The appellants filed a bill of complaint seeking (1) a declaration that the ordinance is null and void as discriminatory, unreasonable, arbitrary and capricious and without substantial relation to the public health, welfare and safety, and (2) an injunction against its enforcement. The Town answered, suggesting *inter alia* that appellants had breached their contract with the Town to build only a fourteen-story apartment house and to convey to it the twelve acres and were claiming title to said twelve acres, and counter-claimed, seeking specific enforcement of the agreement to convey the twelve acres, or, alternatively, damages, and an injunction against the building of an apartment house higher than fourteen stories or 140 feet or, alternatively, damages.

Appellants answered the Town's counter-claim, denying an agreement to limit the height of the apartment house to fourteen stories and a binding obligation to convey the twelve acres, and filed a counter-claim in three counts. Count I alleged that about May 1, 1963, appellants and the Town agreed that (a) the Town would recommend to the Montgomery County Council that it grant appellant's application for the rezoning of the 18.1906 acres of land in the Town (Parcel A) from R-60 to R-H and would not oppose use of the land in any manner then permitted by the Montgomery County zoning ordinance if (b)

---

1. Sec. 72-84 (c) of the Montgomery County Code (1960) provides that a two thirds majority vote of the Montgomery County Council "shall be required before said council may change the zoning classification of property within any incorporated municipality contrary to the recommendation of such municipality thereon."

appellants would grant the Town a scenic and conservation easement of 2.1906 acres (on a strip of land some 85 feet wide along the western boundary of Parcel A) and would grant the Town a twenty-year covenant running with the land to limit development of Parcel A to density and uses permitted for sixteen acres, and further would grant the Town an option to buy a two-acre tract at a price of $125,000 an acre. About a year later the agreement was mutually modified, appellants promising to convey the two acres without cost and the Town agreeing to permit development of Parcel A under R-H zoning for 18.1906 acres. It was then alleged that appellants on June 29, 1964, executed and recorded a deed to the Town granting the scenic and conservation easement in 2.1906 acres as agreed, and on the same day delivered to an escrow agent under an agreement executed by the parties a deed to the two acres. Appellants then proceeded with the planning and design of the proposed apartment building and received a building permit from Montgomery County for a structure twenty-four stories and 210 feet high. The Town thereupon, in breach of its agreements, opposed the erection of the building by public statements of the Mayor, employment of counsel to prevent the construction, appropriation of funds for legal expenses in connection with its opposition, efforts to have Montgomery County limit the height of R-H buildings or to deny the building permit, and adoption of an ordinance to limit the height of buildings in the Town to seventeen stories or 160 feet, all of which "constitute continuing substantial and material breaches of the agreement between the parties," amounting to "a repudiation of said agreement" and a "substantial failure of the consideration." The relief asked was rescission of the agreement between the parties, reconveyance of the easement, nullification of the declaration of covenant by enjoining the enforcement of rights under it, return of the deed to the two acres or, alternatively, damages of $1,500,000.

Count II alleged that in May 1963, after announcement by the Maryland-National Capital Park and Planning Commission that a park area should be established on a portion of the 30.-1906 acres of land of which Parcel A was a part, the appellants, in discharge of a public responsibility to Montgomery County

and the Town, offered to make a gift of ten acres to the Town "with the specific understanding and stipulation and on condition that the Town receive and accept the land so offered as a gift with no consideration flowing therefrom" to appellants. The Town "represented * * * that it would accept the aforesaid offer as a gift * * *." Appellants, in reliance on this representation, executed a series of five deeds each granting the Town two acres, said deeds being dated June 9, 1963, August 4, 1964, August 4, 1964, August 4, 1964, and August 4, 1964. The deed of June 9, 1963, and one of the August 4, 1964, deeds were delivered. The remaining three were deposited in escrow with a title company under an escrow agreement dated June 29, 1964, one deed to be delivered annually thereafter by the escrow agent, all lots conveyed to be free of liens and encumbrances at the time of delivery. On June 9, 1965, the agent delivered to the Town one of the deeds and retained in its possession the other two. Appellants would not have deeded any of the ten acres to the Town but for the representations of the Town that it intended to accept the lands as a gift.

The final allegation is that the Town's misrepresentations were substantial, deliberate and wilful and designed to deceive the appellants and constituted a fraud on appellants. The relief prayed was that the Town be ordered to reconvey the six acres for which deeds had been delivered, that the Town be enjoined from exercising any rights under the deeds still in escrow or, alternatively, judgment for $2,500,000 compensatory and $2,500,000 punitive damages.

Count III repeated allegations of Count I as to Parcel A and its rezoning, as to the easement, the covenant limiting development, the option on and the subsequent conveyance of the two acres, and then alleged a further promise by appellants to convey ten additional acres, two acres immediately with the remaining eight acres to be conveyed in four annual instalments of two acres each. It then was alleged that Parcel A was rezoned after the favorable recommendation of the Town, and that two deeds for two acres each were delivered, three others going into escrow, one of which was thereafter delivered on June 9, 1965. The planning and design of the apartment building and the issuance of the building permit were then alleged

and finally appellants set out the breach of the agreement by the Town and its opposition to the erection of the building, all as evidenced by the actions detailed in Count I. The relief prayed was rescission of the agreement between the parties, the reconveyance of the easement, the enjoining of the exercise of rights under the covenant, the enjoining of the exercise of any rights under the deeds in escrow and the reconveyance of the six acres heretofore conveyed to the Town or, alternatively, damages in the amount of $4,000,000.

The Town demurred to the three counts of the appellants' counter-claim and Judge Moorman sustained the demurrrer, treating the three counts together and ruling (a) that since the appellants could not put the Town in the same position it was before the agreements between the parties were reached ("a legal impossibility in that the property is now zoned R-H [highrise] and only a Resolution by the County Council can rezone the subject property back to R-60 [family dwellings]"), a suit for rescission could not be maintained, and (b) that appellants "have not stated a cause of action for rescission in that they have failed to make an election between (1) rescission of the contract or (2) affirming the contract and suing for damages."

Appellants contend that (a) the trial judge erred in treating Count II as a claim in contract and that the count clearly states a valid cause of action for fraudulent misrepresentations inducing a gift, and (b) erred in holding that a return to the R-60 zoning must be effectuated by the appellants before they can have rescission because where the equities of the situation strongly require it and restoration cannot be made under the circumstances, one seeking rescission need not offer to return or return the consideration received in order to maintain his action, and (c) appellants asked only for rescission of the contracts in Counts I and III and the return *either* of the properties they had conveyed *or* their money value and that this is both permissible and appropriate.

The Town defends the position of the trial court on Counts I and III and on the necessity for election. It concedes that if the claim under Count II is for rescission of a gift for misrepresentations the demurrer should have been overruled, but it urges that the claim was in contract and therefore is subject

to the same need for restoration as the claims under Counts I and III. Its most urgent argument is in support of its motion to dismiss the appeal as being from an interlocutory order which is not appealable, and this contention must be answered before the merits are met.

An appeal generally may be taken only from a final judgment, decree or order. Code (1957), Art. 5, §§ 1 and 6. Certain interlocutory orders of a court of equity have been made appealable by the Legislature in § 7 of Art. 5 of the Code, and one of these is "(c) A refusal to grant an injunction * * *." Maryland Rule 605 a, promulgated in its present form in 1956, to take effect on January 1, 1957, provides that where more than one claim for relief is presented in an action, the court may direct the entry of a final judgment (which, under Rule 5 o, is a "judgment at law, decree in equity or other act or order of court final in its nature * * *") upon one or more but less than all of the claims "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." In the absence of such determination and direction by the trial judge "any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims." Judge Moorman did not, in sustaining appellees' demurrer, make an express determination that there was no just reason for delay nor expressly direct the entry of a judgment, so that if Rule 605 a controls, the order appealed from was an unappealable interlocutory order, and the appellees press us to adopt this view. Appellants contend that § 7 of Art. 5 of the Code controls and we agree.

After certain rules, of which Rule 605 a was one, were promulgated by the Court of Appeals, the Legislature by Ch. 399 of the Laws of 1957 repealed many statutes on practice and procedure which had been superseded or affected by the new rules. Section 4 of Ch. 399 repealed Art. 5 of the Code—Appeals—and enacted in lieu thereof a new Art. 5, which included § 7 headed "Appeals from Certain Interlocutory Orders," paragraph c of which permits an appeal from a refusal

to grant an injunction. The Constitution of Maryland in § 18A of Art. IV authorizes the Court of Appeals from time to time to "make rules and regulations to regulate and revise the practice and procedure in that Court and in the other courts of this State, which shall have the force of law until rescinded, changed or modified by the Court of Appeals or otherwise by law." Under this section the Legislature may rescind, change or modify a rule of this Court. *Hensley v. Bethesda Metal Co.,* 230 Md. 556.

Section 35 of Art. 5 (Code, 1951), before its repeal and the enactment in lieu thereof of a new Art. 5, contained a provision making appealable an order refusing to grant an injunction and if Rule 605 a be assumed to have superseded that provision in multiple claims actions, it seems clear that the 1957 action of the Legislature restored the situation to where it was before Rule 605 a was passed. In enacting Ch. 399 the Legislature was concerned directly and precisely with the interplay of its statutes and the rules of the Court of Appeals. In that enactment it repealed statutes which were made ineffective or obsolete by the new rules and preserved or newly enacted the statutes it desired to be still effective. Under the circumstances it must be presumed that with full knowledge of Rule 605 a and its possible impact on the right to appeal the refusal of an injunction in multiple claims actions, the Legislature enacted § 7 of Art. 5 to provide for immediate appeals from the refusal of an injunction without expressly excepting such refusals in multiple claims cases. We think the right of appeal in the classes of actions enumerated in § 7 is general and not affected by Rule 605 a. *Cf. Hensley v. Bethesda Metal Co., supra.* See also *Montgomery County v. Maryland-Washington Metropolitan District,* 200 Md. 525.

This construction is in accord both with the general theory that statutes in *pari materia* should, if possible, be read together and each given effect, and with the construction put on similar provisions in the Federal Rules of Civil Procedure. Rule 605 a is substantially a duplicate of Federal Rule 54 (b). *Durling v. Kennedy,* 210 Md. 549, 554. Section 7 of Art. 5 has a counterpart in 28 U. S. C. § 1292 (a) (1). The federal courts have almost all held that an order granting or refusing an injunc-

tion in a multiple claims action is a statutorily appealable interlocutory order. See *Meyer v. Indian Hill Farm* (2d Cir.), 258 F. 2d 287, 290, and cases cited; *George P. Converse & Co. v. Polaroid Corporation* (1st Cir.), 242 F. 2d 116, 119; *Pang-Tsu Mow v. Republic of China* (D. C. Cir.), 201 F. 2d 195, 197, *cert. denied,* 345 U. S. 925; *Hook v. Hook & Ackerman, Inc.* (3d Cir.), 213 F. 2d 122, 129; 6 Moore, *Federal Practice* (1965 Ed.), pp. 48 and 234.

We think the demurrer should not have been sustained. The general rule is, as the chancellor stated it to be, that one who seeks to rescind a contract or to have equity rescind it must restore to the other party the consideration that was given by that party, but there are a number of exceptions to the rule. This is peculiarly so in equity where the two fundamental reasons for the rule are that he who seeks equity must do equity and that the rescinder must not be unjustly enriched. "The reason for the rule limits it," *Restatement, Restitution* § 65 comment e. In 5 Williston *Contracts* § 1530 (rev. ed. 1937), the learned author says that where on the particular facts it seems equitable to allow rescission without complete or perfect restoration of consideration, the modern tendency is to allow the relief. He points out that the rule that one seeking rescission of a contract must put the other in the position he was before the contract is "wholly an equitable one," and that "impossible or unreasonable things, which do not tend to accomplish equity in the particular transaction, are not required." Equity will in an appropriate case order rescission without restoration if: (1) the performance by the one against whom rescission is sought has become worthless, or (2) the respondent has prevented its return, or (3) the performance conferred only an intangible benefit upon the complainant, or (4) only a promise was given, or (5) the complainant can properly retain it irrespective of the voidable transaction, or (6) it is in possession of or is subject to the order of a person having a right superior to the complainant, or (7) restoration is impossible for some reason not hereinbefore mentioned and the clearest and strongest equity demands that rescission be granted (sometimes with a monetary substitute for restoration). *Restatement, Restitution* §§ 65 and 66; *Restatement, Contracts* §§ 480 and 481; 3 Black, *Re-*

*scission and Cancellation,* §§ 616-27; 17A C. J. S. *Contracts* § 438; 12 C. J. S. *Cancellation of Instruments* § 44 (b); 17 Am. Jur. 2d *Contracts* §§ 513 and 514; 13 Am. Jur. 2d *Cancellation of Instruments* § 38.

This Court has recognized the exceptions to the general rule of restoration and applied some of them. In *Findlay v. Baltimore Trust Co.,* 97 Md. 716, 721, reversing the court below which had sustained a demurrer to a bill for rescission on the ground that the complainant could not restore corporate bonds he alleged he had purchased in reliance on fraudulent representations of the respondent, the Court said the respondent should be required to answer. The Court noted that in *Grymes v. Sanders,* 93 U. S. 62, it was said that a court of equity is reluctant to rescind unless the parties can be put in *status quo* and if this cannot be done will give such relief only where "the clearest and strongest equity imperatively demands it," but relying on the fact that the impossibility of literal restoration was brought about by the actions of the respondent in suggesting to the complainant that the defaulted bonds be turned over to a creditor's committee, the Court said:

> "It is true as stated by Chief Justice Marshall in *Pratt v. Carroll,* 8 Cranch, 475, 'that equity will not relieve where it is impossible to place the parties in the same situation and when the real fault is imputable to the person praying the aid of the Court.' But it is also well settled, that when the situation of the parties is altered and changed by the fraud of the vendor, the defrauded party will be granted relief in a Court of equity."

See also *Gaver v. Gaver,* 176 Md. 171, 188, where the Court pointed out the exceptions to the general rule in situations (a) of impossibility of restoration due to the fault of the respondent, (b) where the complainant is entitled in any event to retain the consideration, and (c) where the consideration is without value; and *Taylor v. Whitehurst,* 151 Md. 621; *Cumberland Coal & Iron Co. v. Sherman,* 20 Md. 117.

In the case before us various of the exceptions, alone or in an interplay or overlapping with others, have been alleged by

the appellants in Counts I and III. At times in these counts the promise of the Town in connection with rezoning is alleged to be that it would not oppose rezoning to R-H, at others that it would recommend rezoning. Always, appellants allege, part of the consideration was the promise of the Town that if the rezoning to R-H were granted, it would not oppose any use of Parcel A permitted under the R-H classification as it existed at the time the agreement was made, and this was a promise only, not subject to return. Furthermore, there is no allegation that would refute the distinct probability that appellants in any event were entitled to the rezoning that the public officials of Montgomery County, acting in accordance with law, as they were sworn to do and required to do, granted them— that is, that the promise not to oppose rezoning or the recommendation to rezone were without any real effect or value. Clearly the Town knew that once the rezoning was granted, appellants themselves could not restore the previous rezoning, because this possibility rested with a public official body not subject to the will or control of the appellants or the Town, and in this sense the Town caused the impossibility of restoration of which it now complains.

If it is ruled that the Town lacked power to pass the challenged ordinance limiting the height of structures within its borders—as to which we now express no opinion—the controversy would, except perhaps peripherally, come to an end. If it had the power, the chancellor should hear the evidence and determine whether its exercise was an unfaithful or fraudulent breach of contract and if so which, if any, of the exceptions to the need for restoration upon rescission is applicable and what solution, equitable to appellants and the Town, is appropriate. It may be, for instance, that the value of the Town's promises or recommendation can and should be arrived at and the Town given credit in money value or these things may be determined to have had no value and to constitute no deprivation to the Town and unjust enrichment to appellants. We decide only that on the allegations of Counts I and III of appellants' counterclaim the chancellor should have overruled the demurrer, heard the evidence, and decided the equitable answer.

The problems presented by Count II are soon disposed of. If

it sounds in contract as the chancellor thought it did, it is controlled by what we have said as to Counts I and III. If it alleges a gift induced by fraud, it is clear, as appellees concede, that "where a gift is obtained by fraud, undue influence, or imposition exerted by the donee, the donor may recover it on the principle that no man should be permitted to secure any benefit from his own wrongful act." *Myers v. Myers,* 185 Md. 210, 219. In either event the demurrer to Count II should have been overruled.

There is no substance to the contention that appellants are barred because they failed to elect between rescission and damages. Their counterclaim seems to lie solely in rescission with alternative claims for either return in specie of what they had conveyed to the Town or its equivalent money value. This is permissible. 12 C. J. S. *Cancellation of Instruments* § 79; 17 Am. Jur. 2d *Contracts* § 519; *cf. Dormay Construction Corp. v. Doric Co.,* 221 Md. 145.

Even if, as the chancellor found, appellants claimed alternatively for rescission on the one hand or affirmance of the agreement and damages for its breach on the other, there was no need for election at the time the chancellor ruled. See Maryland Rule 313 a; *Hamlin Machine Co. v. Holtite Mfg. Co.,* 197 Md. 148; and *Kirchner v. Allied Contractors,* 213 Md. 31, 36-37.

> *Order reversed, with costs, and case remanded for further proceedings consistent with the aforegoing opinion.*