## CITY OF GREENBELT, MARYLAND v. BRESLER, et ux.
[Nos. 613 and 614, September Term, 1966.]

*Decided December 7, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Hyman Ginsberg,* with whom were *Ginsberg & Ginsberg* and *Thomas R. Brooks* on the brief, for appellant.

*Abraham Chasanow* for appellees.

FINAN, J., delivered the opinion of the Court.

212

These are two appeals from separate orders of the Circuit Court for Prince George's County dated July 7, 1966. In No. 613, the court overruled appellees' demurrer to appellant's bill for an injunction but granted appellees' motion for summary judgment. In No. 614, the court sustained a demurrer to appellant's bill for specific performance without leave to amend. In both cases the City of Greenbelt, Maryland, is the appellant, and Charles S. Bresler and Fleur Bresler, his wife, are the appellees. The cases involve a set of agreements entered into by the City of Greenbelt and the Breslers, the latter being owners of a large tract of land which they desired to have rezoned from R.P.C. (Rural Residential Planned Community) to 2R18 (Medium Density Garden Apartments).

Some time before April of 1962 the Breslers applied to the Maryland-National Capital Park and Planning Commission for rezoning of a 50.4390-acre tract of land situated in Greenbelt, and the Commission referred the application to the City of Greenbelt for appropriate recommendation. As an inducement to obtaining favorable recommendation from the City, the Breslers entered into two agreements. By a sealed declaration of covenants dated April 16, 1962, and recorded among the land records of Prince George's County, the Breslers agreed to limit the number of dwelling units to seven (7) per acre for the entire tract and to conform the buildings to all requirements of the R-30 zone as and when adopted for the Maryland-Washington Regional District of Prince George's County. The declaration stated in pertinent part:

> "NOW, THEREFORE, know all men by these presents that the above-named owners, their heirs, successors and assigns do hereby establish and impose upon said land, the following protective covenants and restrictions to be observed and enforced by them, their heirs, successors and assigns and all purchasers or any lessee of said land or any part thereof as follows:
>
> 1. *LAND USE AND BUILDING TYPE*: The number of dwelling units shall not exceed an average of seven (7) per acre for the entire 50.4390 acres of land in said tract.

2. *ENFORCEMENT*: Enforcement of these covenants shall be by injunctive proceedings in Equity provided that any such proceedings shall be commenced no later than thirty days after the owners have notified the City Manager of the City of Greenbelt that they have obtained any building permit for the construction of any improvements on said tract; provided further that the owners notify said City Manager of said building permits within a reasonable time after obtaining said permits. If such proceeding be not filed within thirty days as aforesaid this restriction shall be deemed fully satisfied.

3. *WAIVER OR MODIFICATION*: The herein covenants shall not be waived or modified by the owners, their heirs, successors or assigns without the consent of the Development Control Committee which shall be comprised of those persons who are the Mayor and City Council of the City of Greenbelt, * * *."

From the record it appears that these covenants had the effect of limiting the permissible number of dwelling units in the tract from 817 to 353.

The Breslers agreed, by another sealed instrument also dated April 16, 1962, to donate a described lot containing 3.3305 acres to the City for exclusive use as a park and recreational area, and to deliver a deed conveying the property within two years. This agreement was expressly conditioned upon the favorable granting of the requested rezoning.

Subsequent to these agreements, the City forwarded its recommendation to the Commission which in turn forwarded its own recommendation to the district council, and the council approved the Breslers' rezoning application late in June, 1962. Shortly thereafter the agreement to convey was also recorded among the land records. However, the 3-acre tract of land was not, and still has not been conveyed to the City.

The record does not indicate any further actions with respect to the tract until late in 1965 when the Breslers applied for and received a building permit from the County for the construction of an eight-story apartment house, containing 178

units, on a parcel of nearly nine acres. Although such a building would conform to the zoning reclassification, it violated the density covenant of the April 16, 1962 declaration of covenants. On December 24, 1965, notice that the Breslers had obtained this building permit was sent by registered letter to James K. Giese, City Manager of Greenbelt. The return receipt was signed by Margaret Perdue, who was subsequently identified as employed by the City, "as a receptionist or clerk or otherwise." Apparently the post office was satisfied that she was authorized to take delivery for the City Manager. On January 17, following, at a meeting of the City Council, the City Manager informed the Council that the Breslers had been issued a permit to construct the eight-story apartment building.

On March 23, 1966, the City filed a bill of complaint setting up the declaration of covenants and the alleged violation, and prayed for injunction against the construction of the apartment house. Following a demurrer, the City petitioned to amend the bill and filed its amended bill on April 27. The City also filed a separate bill for specific performance of the agreement to convey the 3.3305 acres of land.

The Breslers demurred to the first bill and then moved for summary judgment. The court overruled the demurrer but granted the motion for summary judgment. In his memorandum opinion, Judge Parker held that the plaintiff failed to seek relief within the thirty-day period provided for in the declaration of covenants and by that failure they were estopped to challenge the granting of the building permit. We affirm this decision.

The Breslers' demurrer to the bill for specific performance was sustained by the lower court. It was of the opinion that, on its face, the bill set out a contract to zone which is illegal as against public policy and therefore unenforceable. This Court does not agree, but is of the opinion that the bill stated a cause of action and that the lower court erred in not hearing evidence on the merits. For this reason we reverse No. 614, and remand to the lower court.

## No. 613 *BILL FOR INJUNCTION*

Chapter 780, Laws of Maryland 1959, repealed and re-enacted the applicable sections of the Montgomery County and

Prince George's County Codes governing the Maryland-National Capital Park and Planning Commission; § 78 (c) provides that before the district council of either county may reclassify the zoning within any municipality the proposed change must be referred to the governing body of the municipality for its recommendation. The statute provides that in Prince George's County such a recommendation is of an advisory nature only and not binding on the district council.

The lower court, in its opinion, stated that the declaration of covenants executed by the Breslers on April 16, 1962 was given as an inducement to the City to make a recommendation to the district council favoring the zoning reclassification requested by the Breslers. We believe, as did the lower court, that the declaration of covenants cannot be insulated from the contract entered into between the Breslers and the City on the same date, by which the Breslers also agreed to convey to the City 3.3305 acres of land for recreational and park purposes, conditioned upon the granting of favorable rezoning. That agreement is more fully discussed by this Court in No. 614.

The City in its argument vigorously contends that there was no element of fraud or bad faith connected with this inducement or with the responsive action taken by the City, and that the transaction was not contrary to public policy. The Breslers in their argument contend that the declaration of covenants was a purely unilateral instrument, adding however that, if it were to be construed as additional consideration for the agreement entered into with the City on the same day, it was invalid as contrary to public policy. The Breslers rely on *Beshore v. Town of Bel Air,* 237 Md. 398, 206 A. 2d 678 (1965) ; *Pressman v. City of Baltimore,* 222 Md. 330, 160 A. 2d 379 (1960) ; *Carole Highland Cit. Ass'n v. Prince George's County,* 222 Md. 44, 158 A. 2d 663 (1960) and *Baylis v. City of Baltimore,* 219 Md. 164, 148 A. 2d 429 (1959), cases wherein this Court held that zoning by contract, or upon condition, or by agreement, acquires no validity when it involves a municipality. See also Trager, *Contract Zoning,* 23 Md. L. Rev. 121 (1963). However all of the foregoing cases involve a contract with the deciding authority, the agency which had final control over the granting or denial of the requested zoning reclassification. We

think there is a significant distinction between those cases where the contract is made between the developer and the zoning authority, and those cases involving a contract entered into in good faith between the developer and a municipality which does not have control over the classification and whose authority is limited to recommendation.

A word should be said about *Pressman*. In that case the contract was purported to be made with the Mayor and City Council of Baltimore, the full corporate title of the City, which is the deciding authority. The contract, although made on behalf of the City by the Planning Commission, was approved as to form and legal sufficiency by the acting city solicitor. In the instant case the district council, the deciding agency, is in no manner a party to the contract. In this regard the instant case is distinguishable from *Pressman*. Also in *Pressman* the Court emphasized that in enacting the pertinent ordinance, the Mayor and City Council completely ignored the contract which had been entered into with the developer at the behest of the planning commission and accordingly this Court did not treat the case as one involving contract zoning.

Furthermore, we think that the opinion of this Court in *Funger v. Mayor of Somerset,* 244 Md. 141, 223 A. 2d 168 (1966), implicitly holds that a contract entered into in good faith between a developer and a municipality, in which part of the inducement is a recommendation to the decision making body on the part of the municipality for zoning reclassification favoring the application of the developer, is valid. In *Somerset* there were many facts parallel to the case at bar. This Court held that the demurrer filed by the Town of Somerset to three counts of the counterclaim filed by the developers should not have been sustained by the lower court and that the case should have been tried on the merits. There is nothing in the opinion which suggests in any way that the agreement by the Town to recommend certain rezoning, requested by the developers, was in any way illegal, or that it was so contrary to public policy that equity could not grant specific performance. On the contrary, there is language in the opinion indicating that if the Town had been conveyed certain property on its promise to treat the same as a gift for certain purposes and then had broken its promise, the donor would be en-

titled to recover the property on the theory that no man should benefit by his own wrong. Chief Judge Hammond, speaking for the Court, stated:

> "If it is ruled that the Town lacked power to pass the challenged ordinance limiting the height of structures within its borders—as to which we now express no opinion — the controversy would, except perhaps peripherally, come to an end. If it had the power, the chancellor should hear the evidence and determine whether its exercise was an unfaithful or fraudulent breach of contract and if so which, if any, of the exceptions to the need for restoration upon rescission is applicable and what solution, equitable to appellants and the Town, is appropriate. *It may be, for instance, that the value of the Town's promises or recommendation can and should be arrived at and the Town given credit in money value or these things may be determined to have had no value and to constitute no deprivation to the Town and unjust enrichment to appellants.* We decide only that on the allegations of Counts I and III of appellants' counterclaim the chancellor should have overruled the demurrer, heard the evidence, and decided the equitable answer." (Emphasis supplied.) *Id.* at 153, 223 A. 2d at 175.

In the instant case, the contract in our opinion being a valid one, the City should be bound by its provisions. However, the City, while vigorously urging the contract's validity, seeks to minimize the legal effect of that portion of the covenants pertaining to the manner in which it shall be enforced. The instrument provides that in the event of a breach the enforcement of its terms shall be by injunctive proceedings which shall be commenced "no later than thirty days after the owners have notified the City Manager of the City of Greenbelt that they have obtained any building permit for the construction of any improvements on said tract; * * *. If such proceedings be not filed within thirty days as aforesaid this restriction shall be deemed fully satisfied."

The City makes the unconvincing argument that, assuming

the thirty-day period of limitations to be valid, it was too short a period of time. The City further argues that notice when given should have been personally served on the City Manager at the principal office of the Town of Greenbelt. The City is reading something into the declaration of covenants that is not there. On December 24, 1965, the Breslers, by registered letter addressed to the "City of Greenbelt, 25 Crescent Road, Greenbelt, Maryland, James K. Giese, City Manager," notified the City that it had obtained a building permit for construction of an apartment building containing 178 units (which in fact violated the density covenants of the contract). Receipt for this letter was signed by a receptionist or clerk employed by the City.

Assuming, *arguendo*, that this notice was deficient, the City Manager at the January 17, 1966 meeting of the Council of the City of Greenbelt actually informed the City that the building permit had been obtained by the Breslers. Further assuming that the thirty-day period did not begin to run until January 17, 1966, injunctive proceedings were not commenced until March 23, 1966, sixty-five days thereafter and clearly beyond the time limit that the most favorable construction of the contract would give the City.

The lower court found the contract to be invalid, and also stated that had the contract been valid the City would have been estopped from seeking injunctive relief because of its failure to institute proceedings within the thirty-day period after receiving notice of the breach. We have already expressed this Court's view, contrary to that of the lower court, to the effect that the contract was valid, however, we agree with the chancellor as to the legal effect of the City's failure to seek timely relief and this is the basis for our affirmance.

## No. 614 *BILL FOR SPECIFIC PERFORMANCE*

The second contract, which was of the same date as the declaration of covenants, April 16, 1962, shows a clear and definite agreement by the Breslers to convey 3.3305 acres of land which are carefully described in the contract by metes and bounds with appropriate plat book references. The land was to have been used for park and recreational purposes and the delivery

of the deed conveying the property within two years was conditioned upon the granting of the requested zoning reclassification for which the City was to make a favorable recommendation.

The same arguments made by the respective parties to the contract in No. 613, which have previously been discussed in this opinion, were also urged in this case. We are compelled to add that the same law applicable to the contract in No. 613 applied here with equal force. In short, we are of the opinion that *Funger v. Mayor of Somerset,* 244 Md. 141, 223 A. 2d 168 (1966), controls and that the contract is valid. See also *City of Baltimore v. Allied Contractors,* 236 Md. 534, 304 A. 2d 546 (1964) ; *Board of County Comm. v. MacPhail,* 214 Md. 192, 199, 133 A. 2d 96 (1957). Compare *Rockville v. Brookville,* 246 Md. 117, 228 A. 2d 263 (1967).

In the case at bar the Breslers secured the benefits of the recommendations of the City for the rezoning of their property. The City of Greenbelt is now attempting to enforce the agreement made in the exercise of its discretion for the purpose of assuring the rights of its citizens to the use and enjoyment of the land for a public park. *Green v. Garrett,* 192 Md. 52, 63 A. 2d 326 (1949) ; 10 McQuillin, *Municipal Corporations* § 28.51 (3d ed. 1966).

The chancellor erred in sustaining the appellees' demurrer to the bill of complaint, therefore the decree sustaining the demurrer is reversed and the cause remanded for a hearing on the merits.

> *Order affirmed in No. 613, appellant to pay the costs. Order reversed in No. 614, and the case remanded for further proceedings, appellees to pay the costs.*