Martin **ROSENGARTEN**

v.

John L. **BUCKLEY**, Jr.; John F. Caffey; Donald L. Dick, Jr.; John D. Doub; Leonard Gerber; Richard L. Hall; James J. Harrison, Jr.; Charles P. McCormick, Jr.; Robert B. McFadden; David B. Michels; E. Clayton Shelhoss; Bailey A. Thomas; Harry K. Wells; Hillman V. Wilson; W. Gordon Yates; Sandoz, Ltd. and McCormick & Company, Inc.

No. HM80–2935.

United States District Court, D. Maryland.

Feb. 23, 1982.

Leon J. Rudd, Marc R. Kivitz, Alvin J. Filbert, Jr. and Wartzman, Rombro, Rudd & Omansky, Baltimore, Md., Irving Bizar and Pincus, Ohrenstein, Bizar, D'Alessandro & Solomon, New York City, for plaintiff.

John Martin Jones, Jr., Donald E. Sharpe, John A. MacColl and Piper & Marbury, Baltimore, Md., for individual defendants.

George Beall and Miles & Stockbridge, Baltimore, Md., Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant Sandoz, Ltd.

Donald A. Scott & Jessica Sanders Jones and Morgan, Lewis & Bockius, Philadelphia, Pa., Richard W. Single, Jr., Hunt Valley, Md., for defendant McCormick & Co., Inc.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

This is a stockholder's derivative suit in which the plaintiff claims that McCormick & Company, Inc. was injured by the purchase of 4.8% of its non-voting common stock from Sandoz, Ltd. Specifically, it is claimed that the Board of Directors of McCormick, in order to preserve their positions within the corporation hierarchy, caused the corporation to make this purchase from Sandoz as part of an agreement under which Sandoz agreed to refrain from making further attempts to gain control of McCormick. Sandoz had purchased the stock in 1979, and, according to the complaint, shortly thereafter proposed a tender offer of $37 per share at a time when the market price of McCormick stock was approximately $23 to $25 per share. It is said that the corporation's board of directors announced a unanimous rejection of the tender offer as not being in the best interests of the corporation or its shareholders.

The corporation also announced that it would file suit against Sandoz for violation of both federal and state law. However, in August 1980, the parties to the dispute entered into an agreement under which McCormick purchased the non-voting common stock in the hands of Sandoz and Sandoz agreed not to make any further attempts to acquire control of McCormick for a period of five years. The complaint asserts that no business purpose exists to justify this purchase and that the price paid for the shares was out of all proportion to their value.

The complaint names as defendants Sandoz, McCormick, and the individuals who are the corporation's principal officers and members of its Board of Directors. These defendants have now all filed motions to dismiss the complaint under various legal theories.

■ The court will first address the motion to dismiss filed by Sandoz. The complaint against Sandoz is based on the theory that it aided and abetted the fraudulent conduct of McCormick's Board of Directors. Sandoz asserts that the complaint must be dismissed because it fails to assert that Sandoz had knowledge of the fraudulent intent of the Board in purchasing the shares held by Sandoz. It is readily apparent that this argument is based on an erroneous conception of the role of the complaint under the Federal Rules of Civil Procedure. The Federal Rules long ago abandoned the idea advanced in code pleading that the pleader must set forth facts constituting a cause of action. WRIGHT, LAW OF FEDERAL COURTS 319 (1976). The purpose of the complaint in federal court is simply to put the defendant on notice of the conduct with which it is charged. It is readily apparent from the memorandum of law filed by Sandoz that it is well aware of the nature of the charge against it. To dismiss the complaint at this stage of the proceeding for the reason advanced here would defeat the intent of Rule 8 that cases should be decided on the merits rather than on the basis of technical errors or omissions in the complaint. The test to be applied is simply whether it appears to a certainty that the pleader could not prove any set of facts in support of his allegations which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To be liable as an aider and abettor for securities fraud, three elements must be proven at trial: (1) primary fraud by the principal; (2) the aider's knowledge of or reckless disregard of the possibility of primary fraud; (3) the aider's substantial assistance of the primary fraud. *Morgan v. Prudential Group, Inc.,* 81 F.R.D. 418 (S.D. N.Y.1978). The defendant has not suggested any reason that shows to a certainty that facts supporting these three elements could not be proven by the plaintiff in this case. Of course, defense counsel is convinced that the necessary proof will not be forthcoming, but if an attorney's confidence in a client's position were sufficient reason to grant a motion to dismiss few if any cases would ever get to trial.

In a closely analogous case, the Second Circuit Court of Appeals reversed the granting of a motion to dismiss. *Nagler v. Admiral Corp.,* 248 F.2d 319 (2d Cir.1957). That case was an antitrust action involving a large number of plaintiffs and defendants and complex legal issues. The district court was persuaded that in a case of that nature the liberal rules governing pleading should be tightened, and it dismissed the complaint because, among other things, the plaintiffs had failed to allege that the defendants combined or conspired together. The Court of Appeals declined to find that any special rules of pleading exist in complicated cases and noted that dismissal for any reason not going to the merits of the controversy is disfavored in any case. It thus concluded that the complaint should not be dismissed merely because of the omission of an element of the cause of action under Section 1 of the Sherman Act.

■ Sandoz has also moved to dismiss the complaint under FRCP 9(b), which provides that in complaints based on fraud or mistake the circumstances constituting fraud or mistake must be stated with particularity. The requirements of the rule have been

held to apply to a charge of aiding and abetting fraud as well as to charges against the primary party. *Morgan v. Prudential Group, supra.* All that is recited in the present complaint concerning Sandoz is that "Sandoz in entering into the transaction is assisting the individual defendants to breach their fiduciary duties to Corporation [sic]". Although it is true that Rule 9(b) must be read together with Rule 8(a), and thus a party alleging fraud is not required to do more than to give a short and simple description of the factual basis of the fraud claim, *Walling v. Beverly Enterprises,* 476 F.2d 393 (9th Cir.1973), the complaint here fails to do even that. The appropriate remedy, however, is not the draconian measure of dismissing the claim against Sandoz with prejudice, but rather to require the plaintiff to file an amended complaint setting forth in detail the circumstances surrounding the alleged fraud. The words of Judge Charles Clark are instructive in this regard: "The petition at bar does not indeed allege the fraud with as much particularity as is desirable. But the omission is not fatal; it is only a pleading, and Rule 8f demands that it 'shall be so construed as to do substantial justice'. Its general purport is plain enough, and if the debtor had really any doubt about its meaning—which plainly it had not—it had, and still has, relief under Rule 12e; the day has passed when substantial interests stand or fall for such insubstantial reasons." *Levenson v. B. & M. Furniture Co.,* 120 F.2d 1009 (2d Cir.1941).

The facts surrounding the fraud claim against Sandoz are stated exclusively on information and belief. A fraud claim can be based on information and belief if the facts surrounding the transaction are peculiarly within the knowledge of the adverse party. *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). Here the circumstances immediately surrounding the share purchase and Sandoz' knowledge of the state of mind of McCormick's directors may have been facts within the exclusive knowledge of the defendants at the time the complaint was filed. If this indeed was the case, the facts on which the plaintiff's beliefs were founded should have been provided. *Id.* In fil-

ing its amended complaint against Sandoz, the plaintiff should therefore set forth the facts on which its beliefs are based if the claim is again not based upon personal knowledge.

Accordingly, the court will grant Sandoz' motion to dismiss but will allow the plaintiff to file an amended complaint within 30 days. The amended complaint should of course be prepared in a manner consistent with the views expressed in this opinion.

 The individual defendants have also moved to dismiss the action. They first assert that the complaint fails to detail the charges of fraud made against them with the particularity required by Rule 9(b). In paragraph 10 of the complaint the plaintiff charges, in substance, that the subject transaction is a fraud upon the corporation and its shareholders because of the lack of a proper business purpose for the purchase and because the price paid for the shares was excessive. The court must look to Maryland law to determine whether these facts by themselves can be circumstances constituting fraud. In order to constitute actionable fraud in Maryland, the plaintiff must show a false representation of material facts or the concealment of such facts by the defendant. *Parish v. Milk Producers Association,* 250 Md. 24, 242 A.2d 512 (1967). Here the complaint fails to show any concealment or false representation of any fact by any of the defendants. The complaint thus falls far short of stating with particularity the circumstances constituting the alleged fraud. Indeed, it fails to state exactly what statement or omission is the basis for the claim. The complaint thus fails to provide adequate notice to the defendants.

The plaintiff has referred the court to several cases, but these cases only confirm the inadequacy of the complaint in this case. In *Seigal v. Merrick,* 422 F.Supp. 1213 (S.D.N.Y.1976), the court upheld a complaint challenged under Rule 9(b) because it detailed not only a breach of fiduciary duty but also fraudulent representations or omissions made in connection with

that breach. In *Walling v. Beverly Enterprises,* 476 F.2d 393 (9th Cir.1973), the court upheld a fraud complaint which stated that on a specific date the defendant entered into a specific agreement with only a limited intention of performing that agreement. Both those complaints gave notice to the defendants of the specific acts of fraud with which they were charged. The complaint in this case provides the circumstances surrounding the alleged fraud but does not detail the acts that constitute the fraud itself. A breach of fiduciary duty alone is not sufficient to constitute a fraudulent act.

As the court has previously stated, the appropriate remedy for a violation of Rule 9(b) at this stage of the proceeding is to require the plaintiff to file an amended complaint. If this amended complaint is based on information and belief, the facts supporting that belief should be provided.

The individual defendants also challenge the adequacy of the complaint under Federal Rule of Civil Procedure 23.1. In particular, they contend that the complaint fails to specify with particularity the reasons for the plaintiff's failure to obtain the actions he desires by submitting his concerns to the shareholders of the McCormick Corporation. The complaint, however, provides several specific reasons for the failure to demand action from the shareholders. The plaintiff contends that because this case involves a charge of fraud and because fraud cannot be ratified by the shareholders, a demand upon them is unnecessary under Maryland law. He further contends that such a demand would place the conduct of the suit in the hands of the Board of Directors and that he could not afford the expense of conducting a proxy fight with the management of the corporation. The movants cite several cases to show that such allegations have been held inadequate. *Clairdale Enterprise v. C.I. Realty Investors,* 423 F.Supp. 257 (S.D.N.Y.1976); *Jones v. Equitable Life Assurance Society of the United States,* 409 F.Supp. 370 (S.D.N.Y. 1975). Those cases, however, hold only that the type of excuses asserted by those plaintiffs were inadequate under the applicable state laws to excuse a demand on shareholders. They do not hold that the type of allegations made here are lacking in particularity, and this court finds the first two allegations to be sufficiently detailed to permit a judgment on their adequacy. As to the claim that a proxy fight would be prohibitively expensive, the plaintiff should provide more details concerning the amount of the expense and the reasons why he is unable to afford it if he wishes the court to consider this excuse.

The remaining question raised by the individual defendants' motion is whether any of the reasons given for failing to make a demand on the shareholders is adequate to excuse that omission.

Courts of different states have reached varying conclusions on the question whether a shareholder suing in the place of the corporation must exhaust his internal remedies if fraud by the corporate directors forms the basis of his complaint. *Compare Mayer v. Adams,* 37 Del.Ch. 298, 141 A.2d 458 (S.Ct.1958), *with Claman v. Robertson,* 164 Ohio St. 61, 128 N.E.2d 429 (1955). *Mayer* and similar decisions hold that requiring a demand on the shareholders is tantamount to asking them to ratify fraud, which they cannot in fact do. Requiring such a demand, under this view, would be a useless exercise. Cases such as *Claman* hold that while the majority of the shareholders may not be able to ratify a fraud by the directors, they may for a variety of legitimate reasons determine that a suit against the directors would not be in the best interest of the corporation. A request that the shareholders take action is therefore necessary even when it is alleged that the directors have defrauded the corporation.

Maryland does not follow *Claman* but instead has adopted the position taken in *Mayer. Parish·v. Milk Producers Association, supra,* 250 Md. at 85, 242 A.2d 512. Therefore, if the present case is based upon a fraudulent act of the directors of McCormick, the plaintiff is not required to bring the matter to the attention of the stockholders of the corporation before bringing

the suit. Of course, a plaintiff may not escape the demand requirement by characterizing a suit which is really based on a breach of fiduciary duty as a fraud action. Because the court has given the plaintiff the opportunity to provide a more detailed version of his claim, it is impossible to say at this point if a demand upon the stockholders is necessary. An examination of the plaintiff's expanded statement of his claim must be made to determine what the real nature of that claim is. The defendants may therefore renew their motion to dismiss for failure to exhaust internal remedies upon the filing of plaintiff's amended complaint.

Finally, the defendant McCormick and Company, Inc. has moved to dismiss the complaint for failure to join parties, to obtain security for expenses, and to obtain a stay of proceedings. The motion to dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(7) and alleges that three wholly owned subsidiaries of Sandoz, Ltd. should have been made parties to this proceeding. The first of these, Sandoz Finance, N.V., is said to be the recipient of the consideration paid by McCormick for the purchase of the shares. The second and third entities are Sandoz United States, Inc., and SFC, Inc. Their connection with this case is that they, along with Sandoz, Ltd. and McCormick, were the parties to the contract that is the subject of this law suit.

Under Rule 19, a court makes a two stage analysis in order to determine, first, whether a party should be joined to a case if feasible and, second, whether a party whose presence would destroy jurisdiction is nevertheless indispensable to the proceeding. Rule 19(a) provides the guidelines for the first stage. That rule provides in relevant part:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

Sandoz United States and SFC were parties to the contract and McCormick points out that the contract cannot be fully rescinded without their presence. They thus meet the criteria established in part 1 of the rule because rescission is one of the forms of relief requested. Sandoz Finance, N.V. was the recipient of the money paid by McCormick and thus has an interest relating to the subject of this litigation which it will be more difficult for it to protect if it is not a party. Sandoz United States, however, is incorporated in the State of New York and its presence in this case would destroy diversity of citizenship and thus the jurisdiction of the court in this case. An analysis under Rule 19(b) is thus required in order to determine whether Sandoz United States is an indispensable party or whether the case can proceed in its absence.

Rule 19(b) provides as follows:

If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ In general, federal courts are reluctant to dismiss a complaint for failure to join a party unless it appears that serious prejudice or inefficiency will result. 7 Wright and Miller, Federal Practice and Procedure § 1609, p. 83 (1972) and cases cited therein. Here, it is at best unclear whether there will be any prejudice at all. McCormick originally argued that if the plaintiff were to prevail Sandoz United States could be subject to a renewal of the litigation begun by McCormick against the Sandoz entities, but the contract for the sale of the stock expressly provides that the suit would be dismissed with prejudice and defense counsel conceded as much at oral argument. Thus factors one and two of Rule 19(b) militate against dismissal.

■ On the other hand, it is conceded that the plaintiff in this case could bring a similar suit in state court. The remaining factor, and the one about which there is some uncertainty, is the question whether the court can fashion adequate relief in this case. To some extent this factor overlaps with factor two—the extent to which the court can shape its decree to avoid prejudice to any party. *Glenny v. American Metal Climax, Inc.*, 494 F.2d 651 (10th Cir.1974). One option available to this court to avoid the necessity for joinder is to award damages, the second alternative form of relief requested by the plaintiff, rather than rescission of the contract. *See Gertner v. Hospital Affiliates International, Inc.*, 602 F.2d 685, 688 (5th Cir.1979). Additionally, Sandoz United States has at best a tangential relation to the contract at issue. Sandoz, Ltd. or one of its other subsidiaries received the payment from McCormick. In return, McCormick received the shares of stock. The crucial element in contract rescission is the return to the status quo, *Funger v. Mayor and Council of Town of Somerset*, 244 Md. 141, 223 A.2d 168 (1966), can thus be achieved without involving Sandoz United States. Thus this case is readily distinguishable from those cited by McCormick in which courts found it impossible to award adequate relief in the absence of a subsidiary corporation. *See, e.g., Glenny v. American Metal Climax, Inc., supra.* In

that case, the subsidiary was found to be indispensable because it operated and held property that was the subject of the litigation and thus the relief requested concerning that property could not fully be granted in its absence.

■ In essence, McCormick's argument to this court is that Sandoz United States must be a party here in spite of the fact that it retains nothing as a result of the contract and in spite of the lack of any showing of prejudice to it should the plaintiff prevail. No Maryland case has been cited for the proposition that all parties to a contract must be joined in an action for rescission of that contract. Even if such law exists, however, at least one federal court has refused to require joinder of all parties whose presence might be required under state law, noting that the definition of the asserted right under state law was only one of the factors to be considered under Rule 19. *Rippey v. Denver United States National Bank*, 260 F.Supp. 704, 710 (D.C.Colo.1966). It must also be remembered that the overriding requirement of Rule 19(b) is that the action should be retained if "equity and good conscience" so require. Here that requirement favors retention of the action. The court thus concludes that Sandoz United States is not an indispensable party and thus this action need not be dismissed with prejudice. The complaint will be dismissed with leave to amend, however, so that the plaintiff may file an amended complaint making Sandoz Finance, N.V. and SFC, Inc. parties to this action.

Finally, McCormick has moved for security for expenses, as permitted by Maryland Rule 328b (incorporated by Local Rule 32 of this court). McCormick also requests that this action be stayed until that security has been posted. The court will rule on the motion at this time because of the possibility that an amended complaint will be filed.

Under the Maryland rule, a corporation may require security in any derivative suit in which the plaintiff holds less than five percent of the outstanding shares of any

class of the corporation's stock. The statute does not vest discretion in the court; it expressly provides that the corporation "shall be entitled at any time before final judgment" to obtain this security. Such state law provisions have been held to constitute substantive law and are thus binding on a federal court whose jurisdiction is based on diversity of citizenship. *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The plaintiff, however, would have this court condition the granting of this security upon the requirement that McCormick provide him with a shareholder list so that he may solicit other shareholders to join in this suit and thus avoid the need to post security. Not only does Maryland law not provide for such a procedure, but another statute expressly limits those persons entitled to a shareholder list to persons who hold more than five percent of a corporation's stock. Md. Corp. & Assoc. Code Ann., § 2–513. The plaintiff's requested procedure would thus endow him with a right he does not possess under Maryland law and one that the legislature of this state has clearly chosen not to give him. This court could not grant such a request without running afoul of *Cohen* and ultimately of *Erie v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Indeed, in the cases cited by the plaintiff federal courts did not create a new right in contravention of state law but rather applied a statute of a type that does not exist in Maryland. *E.g., Haberman v. Tobin,* 466 F.Supp. 447 (S.D.N.Y.1979); *Weber v. Continental Motors Corporation,* 305 F.Supp. 404 (S.D.N.Y.1969).

Therefore, the defendant McCormick is entitled to security for its expenses in the event that the plaintiff elects to file an amended complaint, and the production of a shareholder list is not a prerequisite to obtaining this security. The court, after reviewing the affidavits submitted by both sides, has determined that for the moment the amount of the security should be set at $10,000.00. The plaintiff will not be entitled to begin discovery until this amount has been posted.

WHEREFORE, it is this 23rd day of February 1982, by the United States District Court for the District of Maryland,

ORDERED:

(1) that the motions to dismiss filed by Sandoz, Ltd., McCormick and Company, Inc. and the individual defendants shall be, and the same hereby are, *Granted;*

(2) that the plaintiff be permitted to file an amended complaint, provided that said complaint be filed with the Clerk of the Court within thirty (30) days;

(3) that, in the event an amended complaint is filed, the plaintiff post security for the expenses of McCormick and Company in the amount of $10,000.00, and that discovery in the case not begin until such amount is posted.